## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MILTON MILLS, M.D., RASHID GHOLSON,
HUA-WEI CHERNG, NORMA HUMPHRIES,
LYNETTE GARNER, DARRELL
BRANSOME, PAUL MILLER, GLENDA
COSTNER, SYBIL HAROLD, ELIZABETH
RUSSELL, for themselves and on behalf of all other
District of Columbia residents similarly
situated,

        Plaintiffs,

        v.

GIANT OF MARYLAND, LLC,
6300 Sheriff Rd,
Landover, Md. 20785

SAFEWAY INC.,

HORIZON ORGANIC,

DEAN FOODS COMPANY
2515 McKinney Ave., Suite 1200
Dallas, TX 75201

NESTLE HOLDINGS, INC.,

FARMLAND DAIRIES, LLC,

SHENANDOAH'S PRIDE, LLC
1013 Centre Road
Wilmington, DE 19805

STONYFIELD FARM, INC.
10 Burton Dr.
Londonderry, NH 03053

CLOVERLAND FARMS DAIRY, INC.,

        Defendants.

Case No.:_____

**NOTICE OF REMOVAL**

1

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1441, Defendants Giant Of Maryland, LLC, Dean Foods Company, Shenandoah's Pride, LLC, and Stonyfield Farm, Inc., by and through undersigned counsel, hereby remove to this Court the Superior Court action, No. 05-0008054, described below, and in support thereof, states as follows:

## INTRODUCTION

1.     On or about October 6, 2005, Plaintiffs commenced a suit in Superior Court for the District of Columbia, by filing a bill of complaint entitled Milton Mills, M.D. *et al.* v. Giant of Maryland, LLC *et al.,* No. 05-0008054 (the "Complaint"). A true and correct copy of the Complaint is attached hereto as Exhibit A.

2.     The Complaint makes allegations against nine Defendants: Giant Of Maryland, LLC, a Maryland corporation with its principal place of business in Massachusetts; Safeway Inc., a Delaware corporation with its principal place of business in California; Horizon Organic Holding Corporation, a Delaware corporation with its principal place of business in Colorado;[1] Dean Foods Company, a Delaware corporation with its principal place of business in Texas; Nestle Holdings, Inc., a Delaware corporation with its principal place of business in Connecticut; Farmland Dairies, LLC, a Delaware corporation with its principal place of business in New Jersey; Shenandoah's Pride, LLC, a Delaware corporation with its principal place of business in Virginia; Stonyfield Farm, Inc., a Delaware corporation with its principal place of business in New Hampshire; and Cloverland Farms Dairy, Inc., on information and belief a Maryland corporation with its principal place of business in Maryland.

---

[1]     The Complaint misnames this Defendant as "Horizon Organic."

3.    On October 24, 2005 and thereafter, Giant Of Maryland, LLC, Safeway Inc., Dean Foods Company, Shenandoah's Pride, LLC, Stonyfield Farm, Inc., and Cloverland Farms Dairy, Inc., were served with the complaint by process servers.  True and correct copies of the Notices of Service of Process received by these defendants are attached as Exhibit B.  A notice of appearance filed by Cloverland Farms Dairy, Inc., is attached as Exhibit C.  Exhibits A, B and C hereto constitute all of the process, pleadings, and orders served on the Defendants in this case.

4.    The Plaintiffs' Complaint is a purported class action brought on behalf of "all lactose intolerant persons who, unaware of their condition, purchased milk in Washington, D.C., and suffered the consequences of its consumption." (Compl. ¶ 29.)  The Complaint alleges that the "majority of the residents of the District of Columbia are lactose intolerant" and that "the class numbers in the hundreds of thousands." *Id.*  The Complaint further alleges that "the scope of the [lactose intolerance] problem has been covered up by the milk industry and government's marketing efforts," and that "the industry's milk marketing campaign, combined with government support of milk, gives the false impression that cows' milk is a necessary part of a healthy diet, for both children and adults." *Id.* at ¶ 6.

5.    The Complaint seeks monetary damages for the named plaintiffs only in an amount less than $100,000, and on behalf of the class, "a permanent injunction requiring defendants to place warning labels on all packaging of milk sold in the District of Columbia, notifying consumers that the contents may sicken them." *Id.* at ¶ 8.  More specifically, the Complaint seeks a injunction barring Defendants from offering milk for sale in the District of Columbia without "warnings such as the following on all milk sold in the District of Columbia":

**WARNING -- IF YOU EXPERIENCE DIARRHEA OR STOMACH CRAMPS AFTER CONSUMING MILK, YOU MAY BE LACTOSE INTOLERANT. CHECK WITH YOUR PHYSICIAN**

**WARNING -- LACTOSE INTOLERANT INDIVIDUALS MAY EXPERIENCE BLOATING, DIARRHEA, OR OTHER GASTROINTESTINAL DISCOMFORT FROM CONSUMING MILK. CHECK WITH YOUR PHYSICIAN.**

Compl. ¶ 69.

6.    The Complaint alleges two counts, one a common law claim for negligent failure to warn causing personal injury, and the other a common law product liability claim for personal injury. (Compl. ¶¶ 52-69).

## BASIS FOR JURISDICTION

7.    This Court has original jurisdiction over this case pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (Feb. 18, 2005) (codified at 28 U.S.C. §§ 1711-1715, 1332(d), and 1453). As detailed below, the removed case is a purported class action in which "(1) "any member of a class of plaintiffs is a citizen of a State different from any defendant"; (2) the "number of members of all proposed plaintiff classes in the aggregate is [not] less than 100;" and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *See* 28 U.S.C. §§ 1332(d)(2) and (d)(5)(B).

**Diversity of Citizenship under the Class Action Fairness Act**

8.    At least one member of the class of plaintiffs is a citizen of a state different from at least one defendant. Of the ten named plaintiffs, the Complaint identifies eight as citizens of the District of Columbia, one as a citizen of Maryland, and one whose citizenship is not stated. (Compl. ¶¶ 10-19.)

9.    Giant Of Maryland, LLC is a citizen of Maryland and Massachusetts; Safeway Inc. is a citizen of Delaware and California; Horizon Organic Holding Corporation is a citizen of Delaware and Colorado; Dean Foods Company is a citizen of Delaware and Texas; Nestle Holdings, Inc. is a citizen of Delaware and Connecticut; Farmland Dairies, LLC is a citizen of Delaware and New Jersey; Shenandoah's Pride, LLC is a citizen of Delaware and Virginia;

4

Stonyfield Farm, Inc. is a citizen of Delaware and New Hampshire; and Cloverland Farms Dairy, Inc. is, on information and belief, a citizen of Maryland.

10.    Thus, "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

**Number of Proposed Class Members Under the Class Action Fairness Act**

11.    There are at least 100 members of all proposed plaintiff classes. The Plaintiffs' Complaint is a purported class action brought on behalf of "all lactose intolerant persons who, unaware of their condition, purchased milk in Washington, D.C., and suffered the consequences of its consumption." (Compl. ¶ 29.) The Complaint alleges that the "majority of the residents of the District of Columbia are lactose intolerant" and that "the class numbers in the hundreds of thousands." *Id.* Thus, the "number of members of all proposed plaintiff classes in the aggregate is [not] less than 100." 28 U.S.C. § 1332 (d)(5)(B).

**Amount in Controversy under the Class Action Fairness Act**

12.    The aggregate cost to all Defendants to comply with the monetary and injunctive relief sought in the Complaint will exceed the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(6) (providing that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000").

13.    Even prior to the passage of the Class Action Fairness Act, Courts in the District of Columbia Circuit quantified the amount in controversy in actions seeking injunctive relief by evaluating such relief from the perspective of *either* the plaintiffs or the defendants. Thus, in cases seeking injunctive relief in this Circuit, the amount in controversy requirement was satisfied if such relief had either a value to plaintiffs *or* a cost to defendants equal to or greater

than the required dollar amount. *See Smith v. Washington,* 593 F.2d 1097, 1099 (D.C. Cir. 1978); *United States Jaycees v. Superior Court*, 491 F. Supp. 579, 581 (D.D.C. 1980).

14.     Moreover, this evaluative rule in injunction cases that has long been the law in the District of Columbia Circuit has since been incorporated into the Class Action Fairness Act, and is indisputably the rule for cases like this, which are removed under that statute. Specifically, the Senate Committee Report accompanying the Class Action Fairness Act makes clear that the amount in controversy under the statute is met "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." *Senate Comm. on the Judiciary, 109th Cong., Report on the Class Action Fairness Act of 2005*, S. Rep. No. 109-14, at 42 (2005).

15.     According to the Senate Committee Report, Congress intended that the provisions of the Class Action Fairness Act relating to the amount in controversy should "be interpreted expansively," and that "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." S. Rep. No. 109-14, at 42 ("If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied).").

16.     Among other measures of relief, the Complaint seeks the following: (1) monetary damages, in an amount less than $100,000, and (2) a permanent injunction forbidding defendants from selling milk in the District of Columbia unless they each milk carton contains a warning such as the following:

**WARNING -- IF YOU EXPERIENCE DIARRHEA OR STOMACH
CRAMPS AFTER CONSUMING MILK, YOU MAY BE LACTOSE INTOLERANT.
CHECK WITH YOUR PHYSICIAN**

**WARNING -- LACTOSE INTOLERANT INDIVIDUALS MAY EXPERIENCE
BLOATING, DIARRHEA, OR OTHER GASTROINTESTINAL DISCOMFORT FROM
CONSUMING MILK.  CHECK WITH YOUR PHYSICIAN.**

17.    The aggregate cost or loss to all Defendants that would result from:  (1) payment of the monetary damages sought, and (2) carrying out the mandatory product warning labeling sought by Plaintiffs will be well in excess of $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2).    The costs and losses resulting from the mandatory product warning labeling has two facets: (a) the costs of producing specially labeled milk products for sale in D.C. only, and (b) the lost sales caused by the pejorative product label warnings that Plaintiffs seek to require.

**A. The costs of producing specially labeled milk products for sale in D.C. only.**

18.    By bar code or other method, an identification number known as a "stock keeping unit" ("SKU") is assigned to each type of milk product produced by each bottler.  Thus, a bottler's gallon whole milk is one SKU, its gallon 2% milk is another SKU, its half gallon whole milk is a third SKU, etc.  At least 271 different milk SKUs are sold by the Defendants in D.C., bottled on at least 45 production lines in 26 plants that bottle milk products sold in both the District of Columbia and other jurisdictions.  None of these plants is located in D.C.

19.    The costs a bottler or retailer would incur in providing the specially labeled milk products required by the injunctive relief Plaintiffs seek comprises several elements:

- **New Packaging** -- $900 Per SKU.  The costs of buying new printing plates to print the new packaging, including any additional artwork, would be approximately $900 per SKU.

- **Packaging Material Storage Costs** -- $450 Per SKU. The manufacturer would have to provide storage space for the new packaging material containing the new labeling, which will be used only for milk products sold in D.C.  This packaging

material will need to be kept separate from the packaging material used for unlabeled milk products being sold in other jurisdictions. At least one additional dry storage pallet slot would be needed for each SKU. Based upon a pallet storage space of 9 square feet, and an average building cost of $50 per square feet for dry storage space, this cost would be $450 per SKU.

- **Costs of special production runs**. $500 per SKU per Year. Milk bottlers would have to make special short production runs of labeled milk products, for sale in D.C. only. This would require stopping normal production, changing labeling equipment and/or plates, and producing products just for D.C. The ongoing annual costs of doing so would be approximately $500 per SKU.

- **Finished Product Storage Costs** --$1,800 Per SKU. Bottlers maintain refrigerated areas where finished product is temporarily stored prior to shipment. A bottler would have to create new storage space for finished, D.C. labeled product (to be distributed and sold in D.C.), which would have to be kept separate from non-labeled product (to be sold in jurisdictions other than D.C.). From a practical standpoint, this is equivalent to creating an entire new SKU, because the manufacturer would be filling orders for D.C. with an entire new line of products, equal in number to the pre-existing line of products, but containing the D.C. labeling. A pallet space slot for finished product is roughly 9 square feet in size. Using an average per square foot refrigerated building cost of $200, this cost comes to $1,800 per SKU.

- **Increase In Storage Operating Costs** -- $315 Per SKU Per Year. The addition of new storage slots for the new SKUs will result in significant increased operating costs. The storage space will be larger; the cost of refrigeration will accordingly rise; the cost of handling materials will increase due to the increased space and additional SKUs, etc. Annual operating costs for a milk product manufacturer (excluding depreciation) are approximately $35 per square foot, including electricity, labor costs, the cost of pallets, repair and maintenance, and the like. As noted earlier, a new SKU requires 9 square feet, so total annual operating costs resulting from the D.C. labeling requirement will be approximately $315 per SKU.

- **Grocery store Warehouses.** Just as manufacturers would have to build additional finished product storage space to handle milk products with the labeling Plaintiffs seek to impose, so too would grocery store warehouses, with respect to those SKUs that are shipped through a warehouse and not directly to the grocery store. The per SKU cost to grocery store warehouses would be roughly the same cost that would be incurred by the bottler, $1,800 per SKU for storage costs and $315 Per SKU Per Year for increased operating costs.

20.     Based on the foregoing, the costs of producing specially labeled milk products for

sale in D.C. only would be one time costs of approximately $1.1 million, and recurring annual

costs of $265,000. Thus, over a ten year period, the costs of producing specially labeled milk products for sale in D.C. only would be $3.73 million.

**B. The Lost Sales Caused By The Pejorative Product Label Warnings That Plaintiffs Seek To Require.**

21.    Plaintiffs seek, presumably intentionally, to impose extremely pejorative warning labels on all milk products sold in the District:

**WARNING -- IF YOU EXPERIENCE DIARRHEA OR STOMACH CRAMPS AFTER CONSUMING MILK, YOU MAY BE LACTOSE INTOLERANT. CHECK WITH YOUR PHYSICIAN**

**WARNING -- LACTOSE INTOLERANT INDIVIDUALS MAY EXPERIENCE BLOATING, DIARRHEA, OR OTHER GASTROINTESTINAL DISCOMFORT FROM CONSUMING MILK. CHECK WITH YOUR PHYSICIAN.**

22.    Thus, Plaintiffs seeks to impose a "warning" against the consumption of milk; directly to associate milk consumption with such phenomena as diarrhea and stomach cramps; and to suggest that the potential effects of milk consumption require medical advice from trained physicians.

23.    Approximately $37 million of milk products are sold in the District each year. Based on studies performed of the effect of product warnings on food purchase decisions, the warning labels Plaintiffs seek would likely cause a 10-15% decline in milk sales (perhaps even greater). The costs (in terms of lost revenues) would be $3.7 million to $5.5 million a year, or $37 million to $55 million over a ten year period.

24.    For all of the foregoing reasons, the aggregate costs to all Defendants resulting from compliance with the monetary and injunctive relief sought in the Complaint will significantly exceed the sum or value of $5,000,000, exclusive of interest and costs.

25.    No other defendants are required to join in this Notice. *See* 28 U.S.C. § 1453(b) (providing that a class action "may be removed by any defendant without the consent of all defendants").

26.    This Notice is timely filed under 28 U.S.C. § 1446(b) in that it is being filed within thirty days of service of the Summons and Complaint on each of the Defendants.

27.    This case may be removed to this Court under 28 U.S.C. § 1441(a) in that the Complaint was filed in the Superior Court for the District of Columbia, which is within the District of Columbia.

28.    Pursuant to 28 U.S.C. § 1446(d), the removing Defendants promptly will give notice of this Notice of Removal to all adverse parties. A Notice of Filing of Notice of Removal is being filed contemporaneously in the Superior Court of the District of Columbia, on November 14, 2005.

WHEREFORE, the case now pending in the Superior Court of the District of Columbia, is hereby removed to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1441.

Respectfully Submitted,

Dated: November 14, 2005

Steven J. Rosenbaum (D.C. Bar No. 331728)
Nadia I. Shihata (D.C. Bar No. 493448)
COVINGTON & BURLING
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 662-6000

Attorney for Defendants Giant Of Maryland, LLC, Dean Foods Company, Shenandoah's Pride, LLC, and Stonyfield Farm, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Notice of Removal was sent via first-class mail, postage prepaid on this 14th day of November, 2005, to:

Bernard J. DiMuro, Esquire
Jonathan R. Mook, Esquire
John M. Tran, Esquire
Hillary J. Collyer
DiMuro Ginsberg, P.C.
908 King Street, Suite 200
Alexandria, Virginia  22314
(703) 684-4333
(703) 548-3181 (fax)
**Counsel for Plaintiffs**

Daniel Kinburn, Esquire
Karen Williams, Esquire
Physicians Committee for
Responsible Medicine
5100 Wisconsin Avenue, N.W.
Washington, D.C.  20016
(202) 686-2210 ext. 308
(202) 686-2155 (fax)
**Counsel for Plaintiffs**

Geoffrey S. Gavett, Bar No. 375884
15850 Crabbs Branch Way, Suite 180
Rockville, Maryland  20855-2622
(301) 948-1177
**Counsel for Defendant Cloverland
Farms Dairy, Inc.**

Derron J. Blakely

11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MILTON MILLS, M.D., RASHID GHOLSON, HUA-WEI CHERNG, NORMA HUMPHRIES, LYNETTE GARNER, DARRELL BRANSOME, PAUL MILLER, GLENDA COSTNER, SYBIL HAROLD, ELIZABETH RUSSELL, for themselves and on behalf of all other District of Columbia residents similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GIANT OF MARYLAND, LLC, SAFEWAY INC., HORIZON ORGANIC, DEAN FOODS CO., NESTLE HOLDINGS, INC., FARMLAND DAIRIES, LLC, SHENANDOAH'S PRIDE, LLC, STONYFIELD FARM, INC., CLOVERLAND FARMS DAIRY, INC., <br><br><br> Defendants. | Case No.:_____ <br><br><br><br> **NOTICE OF REMOVAL** <br> **Exhibit A** |

File Copy

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

**Civil Division**

|  |  |
|---|---|
| MILTON MILLS, M.D., RASHID GHOLSON, HUA-WEI CHERNG, NORMA HUMPHRIES, LYNETTE GARNER, DARRELL BRANSOME, PAUL MILLER, GLENDA COSTNER, SYBIL HAROLD, ELIZABETH RUSSELL, for themselves and on behalf of all other District of Columbia residents similarly situated, | ) ) ) ) ) ) ) ) ) ) |
|        Plaintiffs, | ) ) |
|    v. | ) |
| GIANT OF MARYLAND, LLC, SAFEWAY INC., HORIZON ORGANIC, DEAN FOODS CO., NESTLE HOLDINGS, INC., FARMLAND DAIRIES, LLC, SHENANDOAH'S PRIDE, LLC, STONYFIELD FARM, INC., CLOVERLAND FARMS DAIRY, INC., | ) ) ) ) ) ) ) ) ) ) |
|        Defendants. | ) ) ) |

05-0008054

Civil Action No. _____

**JURY TRIAL DEMANDED**

RECEIVED
CIVIL CLERK'S OFFICE
OCT 0 6 2005
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs, Milton Mills, Rashid Gholson, Hua-Wei Cherng, Norma Humphries, Lynette Garner, Darrell Bransome, Paul Miller, Glenda Costner, Sybil Harold, Elizabeth Russell, for themselves and on behalf of all other District of Columbia residents similarly situated, by and through their counsel, allege as follows upon information and belief except as to the allegations specific to the named plaintiffs:

## NATURE OF THE ACTION

1.  The risks inherent in some products, such as chainsaws and rollerblades, are revealed through their very nature, but cows' milk is not one of those products. To the contrary, many consumers consider cows' milk to be a natural and healthy food—parents instruct their children

1

to drink milk for healthy bones and the dairy industry, government agencies, and many health professionals heavily promote cows' milk as an important part of a balanced diet. For lactose intolerant consumers, however, cows' milk consumption has several unforeseen, painful, and unpleasant results.

2.  Lactose intolerance is the inability to digest the milk sugar lactose, causing gastrointestinal symptoms including flatulence, bloating, cramps, and diarrhea in individuals after consuming milk (and milk containing products). Severity of lactose intolerance symptoms varies according to the amount of milk consumed and the presence of other foods. Some lactose-intolerant individuals experience flatulence and bloating, while others may experience extreme stomach cramps and diarrhea.

3.  These symptoms result from an absence of the lactase enzymes that break down lactose. Virtually all infants and young children have the lactase enzymes necessary to split lactose into simpler sugars that can be absorbed into the bloodstream. Prior to the mid-1960s, most American health professionals believed that these enzymes were present in nearly all adults as well. Since then it became known that 75% of the world's population, including 90% of Asian Americans, 90% of Native Americans, 60% to 80% of African Americans, 50% to 80% of Latinos, and 6% to 22% of Caucasians are lactose intolerant.

4.  In 1988, the *American Journal of Clinical Nutrition* reported, "It rapidly became apparent that this pattern [of lactose intolerance] was the genetic norm, and that lactase activity was sustained only in a majority of adults whose origins were in Northern European or some Mediterranean populations." Scrimshaw NS, Murray EB. *The acceptability of milk and milk products in populations with a high prevalence of lactose intolerance. Am J Clin Nutr*

1988;48:1083-5. In other words, some people tolerate milk sugar as adults only because of an inherited genetic mutation that causes the lactase enzyme to persist.

5. The ability to produce lactase enables infants to absorb the sugars present in their mothers' breast milk. After the age of weaning, it is normal for the human body to stop making lactase because infants no longer consume breast milk. However, a genetic mutation enables some people to produce lactase throughout their lives.

6. While some members of the general public have some knowledge about lactose intolerance, the true scope of the problem has been covered up by the milk industry and government's marketing efforts. The industry's milk marketing campaign, combined with government support of milk, gives the false impression that cows' milk is a necessary part of a healthy diet, both for children and adults. Milk manufacturers, including defendants, are part and parcel of this marketing effort--they pay for it, control the message, and go to great lengths to stifle contrary information, despite being well aware of the misleading messages being conveyed to the American public, including the residents of the District of Columbia.

7. Just as human milk is for human infants, cows' milk is suited to the nutritional needs of calves, who--unlike human infants--have four stomachs and grow from less than 100 pounds at birth to over 1,000 pounds within two or three years. Cows' milk is not appropriately composed for human babies. For humans, cows' milk consumption causes a host of problems that make it anything but a healthy beverage. Lactose intolerance is one of those problems.

8. The named plaintiffs, all of whom are lactose intolerant, bring this case on behalf of themselves and on behalf of all District of Columbia residents who, unaware of their lactose intolerance, have unwittingly been subjected to gastrointestinal pain and discomfort by purchasing and consuming milk sold by defendants. Plaintiffs request damages for the named

plaintiffs only, and, on behalf of the class, a permanent injunction requiring defendants to place

warning labels on all packaging of milk sold in the District of Columbia, notifying consumers

that the contents may sicken them.

## JURISDICTION

9.  The Court has subject matter jurisdiction over common law and equitable claims in this

matter pursuant to D.C. Code § 11-921. The Court has personal jurisdiction over defendants

pursuant to D.C. Code §§ 13-334, 13-423(a)(1), (3)–(4). The allegations herein relate to

defendants' purposeful transaction of business in the District of Columbia and their infliction of

tortious injury on plaintiffs in the District of Columbia through such transactions. Through their

conduct at issue, defendants purposefully availed themselves of the jurisdiction of the District of

Columbia.

## PARTIES

10.  Plaintiff Milton Mills, M.D., is a 47-year-old African-American physician who has been

lactose intolerant since 1981. He has purchased milk in Washington, D.C., after which he

became exceedingly sick. He suffered for a significant period of time from lactose intolerance

before learning that dairy consumption was making him sick and that he was lactose intolerant.

11.  Plaintiff Rashid Gholson is a 7-year-old African-American resident of Washington, D.C.,

who is lactose intolerant. Rashid's parents fed him cows' milk purchased in the District of

Columbia for years, during which time he experienced stomach pain and diarrhea.  Rashid's

parents fed him milk because they believed, as a result of defendants' and other dairy industry

advertising, that milk was required as part of a healthy diet for a growing child.  In fact, children

do not require cows' milk as part of a healthy diet, and a diet free of dairy products is healthier

for children and adults. Rashid's parents did not realize for a period of years that he was lactose intolerant.

12. Plaintiff Hua-Wei Augustin Cherng is a 23-year-old Asian-American resident of Maryland who purchased milk in the District of Columbia. He discovered his lactose intolerance in 2004 after consistently experiencing diarrhea and stomach cramps from consuming milk. He suffered for a significant period of time from lactose intolerance before learning that dairy consumption was making him sick and that he was lactose intolerant.

13. Plaintiff Norma Humphries is a 27-year-old African-American resident of Washington, D.C., who purchased milk in the District of Columbia until 2003, when she began experiencing flatulence and diarrhea after consuming milk. She suffered for a significant period of time from lactose intolerance before learning that dairy consumption was making her sick and that she was lactose intolerant.

14. Plaintiff Lynette Garner is a 45-year-old African-American resident of Washington, D.C., who purchased milk in the District of Columbia until 2003, when she began experiencing gastrointestinal pain and diarrhea after consuming milk. She suffered for a significant period of time from lactose intolerance before learning that dairy consumption was making her sick and that she was lactose intolerant.

15. Plaintiff Darrell Bransome is a 33-year-old African-American resident of Washington, D.C., who purchased milk in the District of Columbia until 2003, when he began experiencing diarrhea after consuming milk. He suffered for a significant period of time from lactose intolerance before learning that dairy consumption was making him sick and that he was lactose intolerant.

16. Plaintiff Paula Miller is a 43-year-old Caucasian-American of Portuguese and Chinese descent who resides in Washington, D.C. She experienced gastrointestinal pain and diarrhea from consuming milk purchased in the District of Columbia until July 2003, when she became aware of her lactose intolerance. She suffered for a significant period of time from lactose intolerance before learning that dairy products were making her sick and that she was lactose intolerant.

17. Plaintiff Glenda G. Costner is a 54-year-old African-American resident of Washington, D.C., who discovered her lactose intolerance in the past year after experiencing bloating, flatulence, and diarrhea from consuming milk. She suffered for a significant period of time from lactose intolerance before learning that dairy products were making her sick and that she was lactose intolerant.

18. Plaintiff Sibyl Harold is a 34-year-old African-American resident of Washington, D.C., who purchased milk in the District of Columbia until 2003, when she began experiencing diarrhea after consuming milk. She suffered for a significant period of time from lactose intolerance before learning that dairy consumption was making her sick and that she was lactose intolerant.

19. Plaintiff Elizabeth Russell is a Caucasian-American of partial Native-American descent who resides in Washington, D.C. In 2005, she began experiencing severe stomach pain after consuming milk. Her pain was so severe that she took time off from work to seek medical help. She has spent more than $150 in medical costs for gastrointestinal tests, including a colonoscopy, in an attempt to identify the cause of her pain and discomfort. She suffered for a significant period of time from lactose intolerance before learning that dairy consumption was making her sick and that she was lactose intolerant.

20. Defendant Giant of Maryland, LLC, doing business as Giant Food Store, is a Maryland corporation with its principal place of business at 6300 Sheriff Rd., Landover, MD 20785. Giant regularly conducts business through several retail grocery stores located in the District of Columbia that it owns and operates. Upon information and belief, it sells millions of dollars worth of its milk brands, Giant and Nature's Promise, at grocery stores in Washington, D.C.

21. Defendant Safeway Inc. is a Delaware corporation with principal executive offices at 5918 Stoneridge Mall Road, Pleasanton, California. Safeway is one of the largest food and drug retailers in North America and has seven store locations in the District of Columbia. Upon information and belief, it sells millions of dollars worth of its milk brands, Lucerne and Safeway Select Organic, in Washington, D.C.

22. Defendant Horizon Organic is a Delaware holding corporation with business offices at 6311 Horizon Lane, Suite 201, Longmont, CO 80308-7597. Upon information and belief, it sells millions of dollars worth of its milk product line, Horizon Organic, at grocery stores in Washington, D.C.

23. Defendant Dean Foods Co. is a Delaware corporation with business offices at 2515 McKinney Ave., Suite 1200, Dallas, TX 75201. Upon information and belief, it sells millions of dollars worth of Hershey's milk at grocery stores in Washington, D.C.

24. Defendant Nestle Holdings, Inc., is a Delaware corporation headquartered at 800 N. Brand Blvd., Glendale, CA 91203. Upon information and belief, it sells millions of dollars worth of Nestle Nesquik milk at grocery stores in Washington, D.C.

25. Defendant Farmland Dairies, LLC, is a New Jersey corporation headquartered at 520 Main Avenue, Wallington, NJ 07057. Upon information and belief, it sells millions of dollars worth of its Farmland Dairies and Parmalat milk at grocery stores in Washington, D.C.

7

26. Defendant Shenandoah's Pride, LLC, is a Delaware corporation headquartered at 1013 Centre Road, Wilmington, DE 19805. Upon information and belief, it sells millions of dollars worth of milk at grocery stores in Washington, D.C.

27. Defendant Stonyfield Farm, Inc, is a Delaware corporation with business offices at 10 Burton Drive, Londonderry, NH 03053. Upon information and belief, it sells millions of dollars worth of its Organic milk at grocery stores in Washington, D.C.

28. Defendant Cloverland Farms Dairy, Inc., is a Maryland corporation with business offices at 2200 Monroe Street, Baltimore, MD, 21217. Upon information and belief, it sells millions of dollars worth of milk at grocery stores in Washington, D.C.

## CLASS ACTION ALLEGATIONS

29. Plaintiffs bring this suit as a class action under Rule 23(b)(2) on behalf of all those lactose intolerant persons who, unaware of their condition, have purchased milk in Washington, D.C., and suffered the consequences of its consumption. A Rule 23(b)(2) action is appropriate because defendants' failure to put warning labels on their products has affected every member of the class and the only relief sought on behalf of the unnamed class members is injunctive.

30. The class clearly satisfies the Rule 23(a)(1) numerosity requirement because, based on census data on the racial composition of the District of Columbia and scientific data on the prevalence of lactose intolerance among different racial groups, it is likely that a majority of the residents of the District of Columbia are lactose intolerant. Thus, the class numbers in the hundreds of thousands. Given the lack of awareness and understanding of the condition among the general public, it is likely that, without proper warning, a large number of these lactose intolerant residents have suffered, and will continue to suffer, from the diarrhea, bloating, flatulence, and cramps that arise from consuming milk.

31. The commonality requirement of Rule 23(a)(2) is met because there is a common question of law as to the defendants' negligent failure to warn, and as to the defectiveness of a product that is sold without a warning label and that can sicken a significant portion of the population of the District of Columbia. Because all milk at issue contains lactose, and because no damages are sought for the unnamed class members, it is irrelevant that different plaintiffs have consumed milk sold by different defendants at different times.

32. The typicality requirement imposed by Rule 23(a)(3) is met because plaintiffs have alleged a course of conduct by defendants that has given rise to plaintiffs' claims, all of which are based on the same legal theories. There are no claims that other class members could assert that plaintiffs cannot assert and there are no defenses that can be asserted against plaintiffs that could not be asserted against other class members.

33. The adequacy requirement imposed by Rule 23(a)(4) is met because the representative parties' attorneys are well-qualified and have considerable experience in bringing class actions and because the class representatives have no claims that are antagonistic to those of other members of the class. Plaintiffs share interests in common with the class and the source of plaintiffs' injuries is the same as that of the entire class.

## FACTUAL ALLEGATIONS

### A.    Lactose Intolerance is the Global Norm

34. The young of all mammalian species, including humans, have lactase enzymes that allow them to digest lactose sugar in the milk produced by their mothers. Lactase enzymes convert lactose into the simpler sugars of glucose and galactose, which then can be absorbed into the bloodstream. Mogelonsky M. *Milk doesn't always do a body good*. American Demographics 1995;17:47-48; Pray W, Pray J. *Lactose intolerance: how to cope*. U.S. Pharm. 2004;6:21-26.

9

35. All mammals, save certain relatively small populations of humans, lose the ability to digest lactose as they pass the age of weaning. In human beings, lactase activity decreases between the ages of two and three and may cease entirely between the ages of five and ten, although for many people the decline occurs in adulthood. Pray, *supra.*

36. Aside from humans, no mammalian species drinks milk beyond infancy or drinks the milk of another species. If a normal adult mammal continues to consume milk during adulthood, the results can be physically unpleasant. Because the small intestine may not produce enough lactase to cope with the amount of lactose ingested, lactose will reach the large intestine in an undigested state. There, bacteria ferment the lactose, resulting in flatulence, bloating, abdominal pain, or diarrhea. Generally it takes only eight to twelve ounces of milk to produce such symptoms. National Digestive Diseases Information Clearinghouse, NIH, Lactose Intolerance (2003), http://digestive.niddk.nih.gov/ddiseases/pubs/lactoseintolerance/ (Mar. 2003) [hereinafter NDDIC]; Swagerty D, Walling A, Klein R. *Lactose Intolerance.* Am Fam Physician 2002;65:1845-50.

37. This inability to digest lactose is known as lactose intolerance. Approximately 75% of the world's population is lactose intolerant. Hertzler SR, Huynh BCL, Savaiano DA. *How much lactose is low lactose?* J Am Dietetic Asso 1996;96:243-6.

38. In contrast, people who are "lactase persistent" inherit a genetic mutation that allows their small intestine to continue to make lactase enzymes well into adulthood. Pray, *supra.* Although only about 25% of the world's population has this mutation, lactase persistence is more common in the United States because a significant portion of the population is of northern European descent, the group among which the mutation is most common. Hertzler S, Huynh B, and

10

Savaiano D, *How Much Lactose is Low Lactose?* J Am Diet Assoc. 1996 Mar; 96(3):243-6;

Pray, *supra*.

39. Because the incidence of the mutation varies according to ancestry, data on lactose intolerance are often broken down by race or ethnicity. It is estimated that up to 90% of Asian Americans, 90% of Native Americans, 60% to 80% of African Americans, 50% to 80% of Latinos, and 6% to 22% of Caucasian Americans are lactose intolerant. Cuatrecasas P, Lockwood DH, Caldwell JR. *Lactase deficiency in the adult: a common occurrence.* Lancet 1965;1:14-8; Huang SS, Bayless TM. *Milk and lactose intolerance in healthy Orientals.* Science 1968;160:83-4; NDDIC, *supra*; Newcomer AD, Gordon H, Thomas PJ, McGill DG. *Family studies of lactase deficiency in the American Indian.* Gastroenterology 1977;73:985-8; Swagerty, *supra*; Woteki CE, Weser E, Young EA. *Lactose malabsorption in Mexican-American adults.* Am J Clin Nutr 1977;30:470-5.

40. As reported in the 2000 census, 60% of the residents of the District of Columbia are African American, 31% are Caucasian American, and 3% are Asian American. The remaining population consists of people who listed themselves as "other" or of multiple races. According to Census Bureau procedures, ethnicity (i.e., Hispanic or nonHispanic) is described separately from race); 8% reported that they were Hispanic. U.S. Census Bureau, District of Columbia QuickFacts (2005), http://quickfacts.census.gov/qfd/states/11000.html (last revised Feb. 1, 2005).

41. Estimating conservatively based on this census data and the incidence of lactose intolerance according to race, a majority of the population of the District of Columbia is likely lactose intolerant.

**B.    The Public is Generally Unaware of Lactose Intolerance**

42. Perhaps because Caucasians historically have been the largest racial group in the United States, awareness of lactose intolerance has developed slowly, even among health professionals. Pray, *supra*. The dairy industry itself acknowledges that the condition is not understood: "What Americans—minorities and nonminorities—don't know is that lactose intolerance is not an 'all-or-nothing' condition. It's a matter of degree." National Dairy Council, Lactose Intolerance & Minorities: The Real Story 3, http:// nationaldairycouncil.org/nationaldairycouncil/nutrition/lactose/lactoseIntolerance.pdf (last visited Aug. 10, 2005).

43. Because the symptoms of lactose intolerance appear in varying degrees, milk consumers may fail to realize they are lactose intolerant and erroneously attribute their bloating, flatulence, cramps, diarrhea, and physical discomfort to other sources. For example, symptoms vary according to the amount of lactose consumed and the kind of milk products consumed. NDDIC, *supra*. In addition, an individual's reaction to milk may depend on whether the milk is consumed alone or with other foods that help slow the speed at which the lactose is digested. American Dietetic Association, When Milk Doesn't Agree With You Anymore (2004), http://www.eatright.org/Public/NutritionInformation/index_18817.cfm (last visited Aug. 10, 2005).

44. Pregnancy is one circumstance in which lactose intolerance may go unrecognized. Diarrhea is common during pregnancy, but it is also a symptom of lactose intolerance. Women often increase their milk consumption during pregnancy because they mistakenly believe, based on the dairy industry's marketing efforts, that it is a healthy practice. If these women have not

12

consumed large quantities of milk in the past, however, they may mistakenly attribute their diarrhea to pregnancy and not to its real cause, the consumption of milk. The Dr. Spock Company, Diarrhea During Pregnancy (2004), http://www.drspock.com/faq/0,1511,1515,00.html (Jan. 29, 2001).

45. Even in adults who have been able to comfortably consume milk for much of their lives, the ability to produce lactase, and therefore to digest lactose, may decrease with age. American Dietetic Association, *supra*. As a result, older adults may never realize that cows' milk, which they have consumed without problem for many years, is the source of their pain and suffering.

46. Certain antibiotics interfere with the small intestine's ability to produce lactase enzymes. Nemours Foundation, Lactose Intolerance (2005), http://kidshealth.org/teen/food_fitness/nutrition/lactose_intolerance.html (June 2004). People who consume milk while taking antibiotics therefore may incorrectly attribute their gastrointestinal discomfort to drugs instead of to milk.

47. Additionally, individuals, especially children, who have had infectious diarrhea (diarrhea caused by a bacteria or virus) may become unable to digest lactose for a few days or weeks afterward. National Library of Medicine, NIH, Lactose Intolerance (2005), http://www.nlm.nih.gov/medlineplus/ency/article/000276.htm (last updated Nov. 10, 2004); Nemours Foundation, *supra*.

48. Not only is the public largely uninformed about lactose intolerance, it is also largely misinformed about the necessity of including milk in a healthy diet. A substantial portion of the District's population may have reduced access to good health care and information about lactose intolerance and proper nutrition. According to the 2000 census, 22.2% of the District of Columbia population over age 25 did not have a high school diploma, 7.8% of the population

13

over age 25 had less than a ninth grade education, and 20.2% of population lived below the

poverty level. *See* U.S. Census Bureau, Quick Tables,

http://factfinder.census.gov/servlet/QTTable?_bm=n&_lang=en&qr_name=DEC_2000_SF3_U_

DP2&ds_name=DEC_2000_SF3_U&geo_id=04000US11 (last visited Aug. 10, 2005); U.S.

Census Bureau, Quick Tables,

http://factfinder.census.gov/servlet/QTTable?_bm=n&_lang=en&qr_name=DEC_2000_SF3_U_

DP3&ds_name=DEC_2000_SF3_U&geo_id=04000US11 (last visited Aug. 10, 2005).

Therefore, many consumers may not realize that they can obtain all of the nutrients found in milk

by consuming nutrient-dense plant-based foods that do not lead to the unpleasant and painful

bloating, flatulence, diarrhea, and cramps that come with consuming milk.

49. Consumers rightfully assume that a product available in their local grocery stores and

promoted as part of a healthy diet by both government and industry will not make them sick.

Rather than being truthful about the health problems and risks of consuming milk, however, the

milk industry falsely claims that everybody needs milk. The National Dairy Council states that

lactose intolerance is "far less prevalent than commonly believed" and that even those who are

lactose intolerant can consume two cups of milk per day. National Dairy Council, *supra*, at 5. It

further claims that so-called "lactose maldigesters" can consume enough dairy products per day

to get 1500 mg of calcium, the amount of calcium in five cups of milk. *Id.* As the industry tells it,

"[i]ndividuals diagnosed as lactose intolerant can meet current recommendations for calcium

from dairy foods." *Id.*

50. In addition to its attempts to convince the public that lactose intolerance is no reason to

stop consuming milk, the milk industry falsely maintains that people who are lactose intolerant

need to consume milk in order to maintain good health. *Id.* at 6–7. It even suggests that

consuming dairy products can help control several "calcium deficiency-related diseases," such as "overweight and obesity." *Id.* at 6.

51. Bombarded by the milk-promoting messages of the federal government and by the dairy industry advertising campaigns designed to fool them into purchasing milk for its purported health benefits, consumers undoubtedly have little understanding of lactose intolerance. Thus, the need for warning labels is clear.

## PLAINTIFFS' CAUSES OF ACTION

### COUNT I

(Negligent Failure to Warn Causing Personal Injury)

52. Plaintiffs hereby incorporate by reference all the preceding paragraphs as if fully set forth herein.

53. This is an action for damages less than $100,000.00, exclusive of interest, costs, and attorneys' fees. Damages are sought only with respect to the named plaintiffs, excluding Dr. Mills. No damages are sought for the unnamed class members, who seek only injunctive relief.

54. Each of the defendants sold milk in the District of Columbia in packaging that lacked warning labels.

55. Defendants knew, or should have known, that a substantial portion of the residents of the District of Columbia are likely lactose intolerant.

56. Plaintiffs, unaware of their lactose intolerance, purchased and consumed milk sold in the District of Columbia.

57. Each plaintiff was injured as a result of this milk consumption.

58. These injuries were foreseeable given the prevalence of lactose intolerance.

59. By not warning of the risk of injury for lactose intolerant individuals, defendants failed to exercise reasonable care under the circumstances.

WHEREFORE, plaintiffs demand judgment against defendants for damages totaling less than $100,000, plus interest (including prejudgment interest), costs and attorneys' fees, and for injunctive relief, and for any and all such other relief as the Court deems just and proper.

## COUNT II

(Product Liability Claim for Personal Injury)

60. Plaintiffs hereby incorporate by reference all the preceding paragraphs as if fully set forth herein.

61. This is an action for damages less than $100,000, exclusive of interest, costs, and attorney's fees, and for injunctive relief. Damages are sought only with respect to the named plaintiffs, excluding Dr. Mills. No damages are sought for unnamed class members, who seek only injunctive relief.

62. Each of the defendants sold milk in the District of Columbia in packaging that lacked warning labels.

63. Defendants knew, or should have known, that a substantial portion of the residents of the District of Columbia are likely lactose intolerant.

64. All milk and milk products at issue were sold by defendants in the course of their business.

65. Defendants, as manufacturers, suppliers, and or retailers have a duty to warn the public of potential injuries that may arise from using their products.

66. The products are defective and unreasonably dangerous, because consumption of the products puts a substantial population of persons purchasing the products at increased risk of gastrointestinal pain, diarrhea, bloating, and cramps.

67. Plaintiffs used the products in a reasonable manner and as defendants intended they be used.

68. Plaintiffs suffered injury from the reasonable and foreseeable use of the products of defendants.

69. Plaintiffs request that defendants be enjoined from marketing their products in the District of Columbia until they include warning labels to alert consumers about the possible risks of lactose intolerance. That injunction should require warnings such as the following on all milk sold in the District of Columbia:

**WARNING – IF YOU EXPERIENCE DIARRHEA OR STOMACH CRAMPS AFTER CONSUMING MILK, YOU MAY BE LACTOSE INTOLERANT. CHECK WITH YOUR PHYSICIAN.**

**WARNING – LACTOSE INTOLERANT INDIVIDUALS MAY EXPERIENCE BLOATING, DIARRHEA, OR OTHER GASTROINTESTINAL DISCOMFORT FROM CONSUMING MILK. CHECK WITH YOUR PHYSICIAN.**

WHEREFORE, plaintiffs demand judgment against defendants for damages less than $100,000, plus interest (including prejudgment interest), costs and attorneys' fees; a permanent injunction preventing defendants from selling milk in the District of Columbia unless each such product has warnings deemed adequate by the Court to advise consumers of the risks of consuming milk; and for such other and further relief as the Court deems just and proper.

Dated: October 3, 2005

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of this matter.

Respectfully submitted,

_Ben D. Mun by JRM_

Bernard J. DiMuro, Esq. (D.C. Bar #393020)
Jonathan R. Mook, Esq. (D.C. Bar #929406)
John M. Tran, *to be admitted pro hac vice*
Hillary J. Collyer, *admission pending*
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
(703) 684-4333
(703) 548-3181 (fax)

Daniel Kinburn, Esq.
Karen Williams, Esq.
PHYSICIANS COMMITTEE FOR
  RESPONSIBLE MEDICINE
5100 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 686-2210 ext. 308
(202) 686-2155 (fax)

*Counsel for Plaintiffs*

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MILTON MILLS, M.D., RASHID GHOLSON,
HUA-WEI CHERNG, NORMA HUMPHRIES,
LYNETTE GARNER, DARRELL
BRANSOME, PAUL MILLER, GLENDA
COSTNER, SYBIL HAROLD, ELIZABETH
RUSSELL, for themselves and on behalf of all other
District of Columbia residents similarly
situated,

                         Plaintiffs,

           v.

GIANT OF MARYLAND, LLC, SAFEWAY
INC., HORIZON ORGANIC, DEAN FOODS
CO., NESTLE HOLDINGS, INC.,
FARMLAND DAIRIES, LLC,
SHENANDOAH'S PRIDE, LLC,
STONYFIELD FARM, INC., CLOVERLAND
FARMS DAIRY, INC.,

                        Defendants.

Case No.:_____

**NOTICE OF REMOVAL**
**Exhibit B**

# AFFIDAVIT OF SERVICE

**District of Columbia**

**Superior Court**

Case Number: CA 2005 CA 008054 B    Court Date: 1/6/2006

Plaintiff:
**MILTON MILLS, MD, ET AL., FOR THEMSELVES AND ON BEHALF OF
ALL OTHERS DISTRICT OF COLUMBIA RESIDENTS SIMILARLY
SITUATED**

vs.

Defendant:
**GIANT OF MARYLAND, LLC, ET AL.**



For:
DIMURO, GINSBERG & MOOK
908 King St.
Suite 200
Alexandria, Va 22314,

Received by ALLIANCE LEGAL SERVICES, INC. on the 21st day of October, 2005 at 11:57 am to be served on
**SAFEWAY, INC. C/O REGISTERED AGENT: CORPORATION SERVICE COMPANY - 1090 VERMONT AVENUE,
NW, SUITE 430, WASHINGTON, DC 20005.**

I, Emily Christensen, being duly sworn, depose and say that on the **24th day of October, 2005 at 11:10 am, I:**

Delivered a true copy of the **INITIAL ORDER/ SUMMONS/ PLAINTIFF'S CLASS ACTION COMPLAINT/ JURY
DEMAND** to RENEE RICE, TEAM LEADER who stated that they were authorized to accept for the witness in their
absence.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in
good standing, in the judicial circuit in which the process was served. I can edit this block to my area's standards
and have seven different declarations if need be.

Emily S. Christensen

_____
**Emily Christensen**
Process Server

Subscribed and Sworn to before me on the 24th day
of October, 2005 by the affiant who is personally
known to me.

_____
NOTARY PUBLIC

My Commission Expires **11/30/06**

**ALLIANCE LEGAL SERVICES, INC.**
**P.O. Box 523078**
**Springfield, VA 22152**
**(703) 644-8571**

Our Job Serial Number: 2005001354

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox





# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MILTON MILLS
Vs.
GIANT OF MARYLAND LLC

C.A. No.        2005 CA 008054 B

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case is assigned to the judge designated below. All future filings in this case shall bear the name of the judge currently assigned to the case beneath the case number in the caption. Upon the filing of any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge NATALIA COMBS GREENE
Date:        October 6, 2005
Initial Conference: 9:00 am, Friday, January 06, 2006
Location:  Courtroom 312
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001

Caio-60.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001  Telephone: 879-1133

---

| MILTON MILLS, M.D., et al., | 05-0008054 |
| *Plaintiff* | |

VS.

GIANT OF MARYLAND, LLC, et al.

Civil Action No. _____

*Defendant*

Cloverland Farms Dairy, Inc.
2200 Monroe Street
Baltimore, MD 21217            **SUMMONS**

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.**  If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Name of Plaintiff's Attorney

Address

Telephone

By _____
         Deputy Clerk

Date 10-06-05

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98      **NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

**AFFIDAVIT OF SERVICE** 

District of Columbia

Case Number: CA 2005 CA 008054 B    Court Date: 1/6/2006

Superior Court

Plaintiff:
**MILTON MILLS, MD, ET AL., FOR THEMSELVES AND ON BEHALF OF ALL OTHERS DISTRICT OF COLUMBIA RESIDENTS SIMILARLY SITUATED**

vs.

Defendant:
**GIANT OF MARYLAND, LLC, ET AL.**



For:
DIMURO, GINSBERG & MOOK
908 King St.
Suite 200
Alexandria, Va 22314,

Received by ALLIANCE LEGAL SERVICES, INC. on the 21st day of October, 2005 at 11:57 am to be served on **CLOVERDALE FARMS DAIRY INC. C/O REGISTERED AGENT: CORPORATION SERVICE COMPANY - 1090 VERMONT AVENUE, NW, SUITE 430, WASHINGTON, DC 20005.**

I, Emily Christensen, being duly sworn, depose and say that on the **24th day of October, 2005 at 11:10 am, I:**

Delivered a true copy of the **INITIAL ORDER/ SUMMONS/ PLAINTIFF'S CLASS ACTION COMPLAINT/ JURY DEMAND** to RENE RICE, TEAM LEADER who stated that they were authorized to accept for the witness in their absence.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. I can edit this block to my area's standards and have seven different declarations if need be.

*Emily S. Christensen*

Subscribed and Sworn to before me on the 24th day of October, 2005 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

My Commission Expires _11/30/06_

**Emily Christensen**
Process Server

**ALLIANCE LEGAL SERVICES, INC.**
P.O. Box 523078
Springfield, VA 22152
(703) 644-8571

Our Job Serial Number: 2005001355

Copyright © 1992-2005 Database Services, Inc. - Process



709076 LEWISLA 11/04/2005 11:12:45 A



## · SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MILTON MILLS
    Vs.                                                  C.A. No.        2005 CA 008054 B
GIANT OF MARYLAND LLC

### INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case is assigned to the judge designated below. All future filings in this case shall bear the name of the judge currently assigned to the case beneath the case number in the caption. Upon the filing of any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge NATALIA COMBS GREENE
Date:       October 6, 2005
Initial Conference: 9:00 am, Friday, January 06, 2006
Location:  Courtroom 312
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

Caio-60.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

| | |
|---|---|
| MILTON MILLS, M.D., et al., | **05-0008054** |
| *Plaintiff* | |

VS.

Civil Action No. _____

| |
|---|
| GIANT OF MARYLAND, LLC, et al. |
| *Defendant* |

Cloverland Farms Dairy, Inc.
2200 Monroe Street
Baltimore, MD 21217

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below**. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| | |
|---|---|
| | By _____ |
| Name of Plaintiff's Attorney | Deputy Clerk |
| Address | Date 10-06-05 |
| Telephone | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98    NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM170
### Washington, D.C. 20001   Telephone: 879-1133

| | |
|---|---|
| MILTON MILLS, M.D., et al., | 05-0008054 |
| *Plaintiff* | |
| vs. | Civil Action No. [          ] |
| GIANT OF MARYLAND, LLC, et al. | |
| *Defendant* | |

Giant of Maryland, LLC
6300 Sheriff Rd.,
Landover, MD 20785

**SUMMONS**

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.**    If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| | |
|---|---|
| BERNARD J. DiMURO (D.C. Bar #393020) | |
| Name of Plaintiff's Attorney | By _____ |
| 908 King Street, Suite 200 | Deputy Clerk |
| Address | |
| Alexandria, VA 22314 | |
| (703) 684-4333 | Date 10-06-05 |
| Telephone | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98    NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001  Telephone:  879-1133

| MILTON MILLS, M.D., et al., | |
|---|---|

*Plaintiff*

**05-0008054**

**VS.**

Civil Action No.  [                    ]

| GIANT OF MARYLAND, LLC, et al. | |
|---|---|

*Defendant*

Stonyfield Farm, Inc.
10 Burton Dirve
Londonderry, NH 03053                    **SUMMONS**

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.**  If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| Bernard J. DiMuro (D.C.Bar# 393020) |
|---|

Name of Plaintiff's Attorney

By _____

| 908 King Street, Suite 200 |
|---|

Address

Deputy Clerk

| Alexandria, VA 22314 |
|---|

| (703) 684-4333 |
|---|

Telephone

Date  10 - 06 - 05

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 91        NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MILTON MILLS
    Vs.                                                    C.A. No.        2005 CA 008054 B
GIANT OF MARYLAND LLC

## INITIAL ORDER

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

    (1) Effective this date, this case is assigned to the judge designated below. All future filings in this case shall bear the name of the judge currently assigned to the case beneath the case number in the caption. Upon the filing of any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

    (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

    (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

    (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge NATALIA COMBS GREENE
Date:        October 6, 2005
Initial Conference: 9:00 am, Friday, January 06, 2006
Location:   Courtroom 312
            500 Indiana Avenue N.W.
            WASHINGTON, DC 20001

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
11/01/2005
Log Number 510664539

TO:   Alex Madrazo
      Dean Foods Company
      2515 McKinney Avenue, Suite 1200
      LB 30
      Dallas, TX, 75201-

RE:   **Process Served in Delaware**

FOR:  Shenandoah's Pride, LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Milton Mills, Pltf. vs. Giant of Maryland, LLC, Dft. // TO: Shenandoah's Pride, LLC *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Jury Demand, Order, |
| **COURT/AGENCY:** | District of Columbia Superior Court, DC Case # 2005- CA 008054 B |
| **NATURE OF ACTION:** | Personal Injury - Lactose intolerance |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/01/2005 at 14:00 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days |
| **ATTORNEY(S) / SENDER(S):** | Bernard DiMuro DiMuroGinsberg, PC 908 King St. Ste 200 Alexandria, VA, 22314 703-684-4333 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day, 790206509090 Image SOP - Page(s): 21 Email Notification, Alex Madrazo ALEX_MADRAZO@DEANFOODS.COM Email Notification, Phillissa Russell PHILLISSA_RUSSELL@DEANFOODS.COM |
| **SIGNED:** **PER:** **ADDRESS:** | The Corporation Trust Company Scott LaScala 1209 Orange Street Wilmington, DE, 19801 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of  1 / WP

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action.

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001  Telephone: 879-1133

05-0008054

---

MILTON MILLS, M.D., et al.,

*Plaintiff*

vs.

GIANT OF MARYLAND, LLC, et al.

*Defendant*

Civil Action No. _____

---

Shenandoah's Pride, LLC
1013 Centre Road
Wilmington, DE 19805

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed  to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below**.   If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue.  N.W. between 9:00 a.m. and 4:00 pm., Mondays through Fridays or between 9:00 a.m. and 12:00 Noon on Saturdays.  You may file the original Answer  with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment  by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

---

Bernard J. DiMuro (D.C.Bar# 393020)
Name of Plaintiff's Attorney

908 King Street, Suite 200
Address
Alexandria, VA 22314

(703) 684-4333
Telephone

By _____
Deputy Clerk

Date  10-06-05

---

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS  FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98     **NOTE:**  SEE  IMPORTANT  INFORMATION  ON  BACK  OF  THIS  FORM.



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

MILTON MILLS
   Vs.
GIANT OF MARYLAND LLC

C.A. No.    2005 CA 008054 B

**INITIAL ORDER**

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case is assigned to the judge designated below. All future filings in this case shall bear the name of the judge currently assigned to the case beneath the case number in the caption. Upon the filing of any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge NATALIA COMBS GREENE
Date:    October 6, 2005
Initial Conference: 9:00 am, Friday, January 06, 2006
Location:  Courtroom 312
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

| | |
|---|---|
| MILTON MILLS, M.D., et al., | 05-0008054 |
| *Plaintiff* | |
| VS. | Civil Action No. _____ |
| GIANT OF MARYLAND, LLC, et al. | |
| *Defendant* | |

**DELIVERED ON**

*November 4*, 20 *05*

Dean Foods Co.
2515 McKinney Ave., Suite 1200
Dallas, TX 75201                    **SUMMONS**

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| | |
|---|---|
| Bernard J. DiMuro (D.C. Bar# 393020) | |
| Name of Plaintiff's Attorney | By _____ |
| 908 King Street, Suite 200 | Deputy Clerk |
| Address | |
| Alexandria, VA 22314 | Date 10-06-05 |
| (703) 684-4333 | |
| Telephone | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98          **NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MILTON MILLS
    Vs.
GIANT OF MARYLAND LLC

C.A. No.    2005 CA 008054 B

### INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1)  Effective this date, this case is assigned to the judge designated below. All future filings in this case shall bear the name of the judge currently assigned to the case beneath the case number in the caption. Upon the filing of any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5)  Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge NATALIA COMBS GREENE
Date:     October 6, 2005
Initial Conference: 9:00 am, Friday, January 06, 2006
Location:  Courtroom 312
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

Caio-60.doc

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MILTON MILLS, M.D., RASHID GHOLSON,
HUA-WEI CHERNG, NORMA HUMPHRIES,
LYNETTE GARNER, DARRELL
BRANSOME, PAUL MILLER, GLENDA
COSTNER, SYBIL HAROLD, ELIZABETH
RUSSELL, for themselves and on behalf of all other
District of Columbia residents similarly
situated,

                Plaintiffs,

        v.

GIANT OF MARYLAND, LLC, SAFEWAY
INC., HORIZON ORGANIC, DEAN FOODS
CO., NESTLE HOLDINGS, INC.,
FARMLAND DAIRIES, LLC,
SHENANDOAH'S PRIDE, LLC,
STONYFIELD FARM, INC., CLOVERLAND
FARMS DAIRY, INC.,

                Defendants.

Case No.:_____

**NOTICE OF REMOVAL**
**Exhibit C**

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

MILTON MILLS, M.D., RASHID GHOLSON,  : 
HUA-WEI CHERNG, NORMA HUMPHRIES, 
LYNETTE GARNER, DARRELL BRANSOME,  : 
PAUL MILLER, GLENDA COSTNER, SYBIL 
HAROLD, ELIZABETH RUSSELL, for  : 
themselves and on behalf of other District of 
Columbia residents similarly situated,  : 

       Plaintiffs,  : 

v.  :      Civil Action No. 05-0008054

GIANT OF MARYLAND, LLC, et al.  : 

       Defendants.

## PRAECIPE

TO THE CLERK OF THE COURT:

Please enter the appearance of Geoffrey S. Gavett, Esquire and the firm of Gavett and

Datt, P.C., as counsel for defendant Cloverland Farms Dairy, Inc. in the above-captioned

matter.

Respectfully submitted,

GAVETT AND DATT, P.C.

BY _____

Geoffrey S. Gavett, Bar No. 375884
15850 Crabbs Branch Way, Suite 180
Rockville, Maryland 20855-2622
(301) 948-1177
**Counsel for Defendant Cloverland
Farms Dairy, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document was sent via facsimile and mailed, first-class, postage prepaid on this _11_ day of _November_, 2005, to:

Bernard J. DiMuro, Esquire
Jonathan R. Mook, Esquire
John M. Tran, Esquire
Hillary J. Collyer
DiMuro Ginsberg, P.C.
908 King Street, Suite 200
Alexandria, Virginia  22314
(703) 684-4333
(703) 548-3181 (fax)
**Counsel for Plaintiffs**

Daniel Kinburn, Esquire
Karen Williams, Esquire
Physicians Committee for
Responsible Medicine
5100 Wisconsin Avenue, N.W.
Washington, D.C.  20016
(202) 686-2210 ext. 308
(202) 686-2155 (fax)
**Counsel for Plaintiffs**

Steven J. Rosenbaum, Esquire
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
(202) 662-6000
(202) 662-6291 (fax)
**Counsel for Defendants**
**Giant of Maryland, LLC, Safeway,**
**Inc., Horizon Organic, Dean Foods Co.,**
**Nestle Holdings, Inc., Farmland Dairies, LLC,**
**Shenandoah's Pride, LLC and Stonyfield Farm, Inc.**

Geoffrey S. Gavett

F:\Data\GD\Insurance\04.000\Cloverland-Mills\pleadings\pracipe.wpd