IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MILTON MILLS, M.D., et al. | : |
| Plaintiffs, | : |
| v. | : Civil Action No.05-2211 |
| | (HHK) |
| GIANT OF MARYLAND, LLC, et al. | : |
| Defendants. | : |

**DEFENDANT CLOVERLAND FARMS DAIRY, INC.'S MOTION TO DISMISS**

The defendant, Cloverland Farms Dairy, Inc., hereby moves to dismiss the Complaint against it, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The defendant respectfully refers this Court to its attached Memorandum of Points and Authorities in support of this motion.

WHEREFORE, defendant Cloverland Farms Dairy, Inc., respectfully requests that this Court dismiss the Complaint against it in the above-captioned matter.

Respectfully submitted,

GAVETT AND DATT, P.C.

BY  /s/
Geoffrey S. Gavett, Federal Bar No. 1997
15850 Crabbs Branch Way, Suite 180
Rockville, Maryland 20855-2622
(301) 948-1177
**Counsel for Defendant
Cloverland Farms Dairy, Inc.**

1

## POINTS AND AUTHORITIES

1. Federal Rules of Civil Procedure 12(b)(6);
2. Attached Memorandum of Law.

                                                  /s/
                                 Geoffrey S. Gavett

## REQUEST FOR HEARING

Defendant Cloverland Farms Dairy, Inc. respectfully requests a hearing on its Motion to Dismiss the Complaint.



                                 Geoffrey S. Gavett

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Defendant Cloverland Farms Dairy, Inc.'s Motion to Dismiss the Complaint, supporting Memorandum of Points and Authorities, and proposed order, were electronically filed and electronically served on this 21st day of November 2005 to:

Bernard J. DiMuro, Esquire
Jonathan R. Mook, Esquire
John M. Tran, Esquire
Hillary J. Collyer
DiMuro Ginsberg, P.C.
908 King Street, Suite 200
Alexandria, Virginia 22314
(703) 684-4333
(703) 548-3181 (fax)
**Counsel for Plaintiffs**

Daniel Kinburn, Esquire
Karen Williams, Esquire
Physicians Committee for
Responsible Medicine
5100 Wisconsin Avenue, N.W.
Washington, D.C.  20016
(202) 686-2210 ext. 308
(202) 686-2155 (fax)
**Counsel for Plaintiffs**

Steven J. Rosenbaum, Esquire
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
(202) 662-6000
(202) 662-6291 (fax)
**Counsel for Defendants**
**Giant of Maryland, LLC, Safeway,**
**Inc., Horizon Organic, Dean Foods**
**Co., Nestle Holdings, Inc., Farmland**
**Dairies, LLC, Shenandoah's Pride, LLC and**
**Stonyfield Farm, Inc.**

                              /s/
                    Geoffrey S. Gavett

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MILTON MILLS, M.D., et al. | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No.05-2211 (HHK) |
| GIANT OF MARYLAND, LLC, et al. | : | |
| Defendants. | : | |

### **ORDER**

Upon consideration of the Motion of defendant, Cloverland Farms Dairy, Inc., to dismiss the Complaint, any opposition thereto, and the oral argument of counsel, it is this \_\_\_\_\_ day of _____, 200\_\_,

ORDERED, that the Motion is granted.

_____
Judge, United States District
Court for the District of Columbia

cc:     Geoffrey S. Gavett, Esquire
Gavett and Datt, P.C.
15850 Crabbs Branch Way
Suite 180
Rockville, Maryland 20855
**Counsel for Defendant**
**Cloverland Farms Dairy, Inc.**

Bernard J. DiMuro, Esquire
Jonathan R. Mook, Esquire
John M. Tran, Esquire
Hillary J. Collyer
DiMuro Ginsberg, P.C.
908 King Street, Suite 200
Alexandria, Virginia  22314
**Counsel for Plaintiffs**

Daniel Kinburn, Esquire
Karen Williams, Esquire
Physicians Committee for
Responsible Medicine
5100 Wisconsin Avenue, N.W.
Washington, D.C.  20016
**Counsel for Plaintiffs**

Steven J. Rosenbaum, Esquire
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
**Counsel for Defendants**
**Giant of Maryland, LLC, Safeway,**
**Inc., Horizon Organic, Dean Foods**
**Co., Nestle Holdings, Inc., Farmland**
**Dairies, LLC, Shenandoah's Pride, LLC and**
**Stonyfield Farm, Inc.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MILTON MILLS, M.D., et al. | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 05-2211 |
| | (HHK) |
| GIANT OF MARYLAND, LLC, et al. | : |
| Defendants. | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT CLOVERLAND FARMS DAIRY, INC.'S
MOTION TO DISMISS**

The defendant, Cloverland Farms Dairy, Inc. ("Cloverland"), respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Complaint against it. Defendant will demonstrate that plaintiffs can prove no set of facts in support of its claim which would entitle the plaintiffs to relief.

**I.   BACKGROUND**

This is a class action suit brought by ten named Plaintiffs on behalf of themselves and all District of Columbia residents who are unaware that they are lactose intolerant and who have had gastrointestinal pain and discomfort after purchasing and consuming milk sold by the nine defendants. Plaintiffs allege that defendant Cloverland is a Maryland corporation that sells millions of dollars worth of milk at grocery stores in Washington, D.C. Nine of the individual Plaintiffs request damages of less than $100,000 on their own behalf. In addition, on behalf of the class, plaintiffs seek a permanent injunction preventing defendants from

selling milk in the District of Columbia until defendants place warning labels on all packaging of milk sold in the District of Columbia, notifying consumers that the contents may sicken them. Complaint ¶ 8.

Plaintiffs allege that based on census data on the racial composition of the District of Columbia and scientific data on the prevalence of lactose intolerance among different racial groups, it is likely that a majority of the residents of the District of Columbia are lactose intolerant. Plaintiffs assert that given the lack of awareness and understanding of lactose intolerance among the general public, a large number of District of Columbia residents have suffered and will continue to suffer from diarrhea, bloating, flatulence, and cramps from consuming milk. Complaint ¶ 30.

The Complaint contains two Causes of Action: Count I - Negligent Failure to Warn Causing Personal Injury; and Count II - Products Liability Claim for Personal Injury. This case was initiated in the Superior Court of the District of Columbia (Civil Action No. 05-008054) and was removed to this Court pursuant to 28 U.S.C. § 1332.

## II.   STANDARDS APPLICABLE TO MOTIONS TO DISMISS

Defendant's Motion to Dismiss is submitted pursuant to Federal Rule 12(b)(6). A motion to dismiss for failure to state a claim may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle the plaintiff to relief. The Court must view the allegations in light most favorable to the Plaintiff,

accepting the truth of all relevant material facts that are well pleaded. *Scheuer v. Rhodes*, 416 U.S. 232 (1974) (abrogated on other grounds).

### III.   LEGAL ARGUMENT

The Complaint against Cloverland should be dismissed for several reasons. First, with respect to the two counts of the complaint for failure to warn and product liability, plaintiffs cannot show that milk is an unreasonably dangerous product. Second, the individual plaintiffs are not entitled to judgment against defendant Cloverland because the individual plaintiffs have not alleged that they have suffered any damages as a result of any alleged negligence on the part of Cloverland. Third, plaintiffs are not entitled to injunctive relief on behalf of the class they allegedly represent because plaintiffs cannot satisfy the requirements for a permanent injunction. Finally, the United States Food and Drug Administration, and not this Court, is the appropriate entity for evaluating whether any labeling changes are required for milk.

**A.   Milk Is Not an Unreasonably Dangerous Product**

Plaintiffs' Complaint contains two causes of action - Count One, Negligent Failure to Warn Causing Personal Injury, and Count Two, Product Liability Claim for Personal Injury. In both counts, plaintiffs allege that defendants knew, or should have known, that a substantial portion of the residents of the District of Columbia are likely lactose intolerant, that plaintiffs, unaware of their lactose intolerance, purchased and consumed milk, that each plaintiff was injured as a result of the milk consumption, and that these injuries were

3

foreseeable given the prevalence of lactose intolerance. Plaintiffs conclude that by not warning of the risk of injury for lactose intolerant individuals, defendants failed to exercise reasonable care under the circumstances. Complaint ¶¶ 55-59. Plaintiffs seek both monetary damages with respect to the named plaintiffs, and injunctive relief.

If a product can cause foreseeable harm to the user of the product, the manufacturer or seller of that product has a legal duty to give a warning to the user. The duty to warn arises under both negligence and strict product liability cases. *East Penn Manufacturing Co. v. Pineda,* 578 A.2d 1113, 1118 (D.C. 1990). The analysis of the failure to warn claim under either of these theories "is basically the same." *McNeal v. Hi-Lo Powered Scaffolding, Inc.,* 266 U.S. App D.C. 473, 836 F.2d 637, 641 (D.C. Cir. (1987), *citing Payne v. Soft Sheen Products, Inc.,* 486 A.2d 712, 719-21 (D.C. 1985); *Russell v. G.A.F. Corp.,* 422 A.2d 989, 991 (D.C. 1980). The duty to warn exists when the evidence shows that the defendant "knew or should have known of the danger sufficiently serious to require a warning." *Pineda,* 578 A.2d at 1119 (*quoting Russell,* 422 A.2d at 992).

Despite plaintiffs' obvious dispute with the value of milk products in the human diet, people have been drinking milk for many millennia, and one can hardly characterize this product as unreasonably dangerous, even assuming, for the purposes of this motion, that plaintiffs allegations are true, and a substantial number of District of Columbia residents have experienced and will continue to have episodes of diarrhea, bloating, flatulence, and cramps after consuming milk.

As plaintiffs would have it, there would be warnings on every product we consume. There would be a warning on sugar and any products containing sugar that they are dangerous for persons with diabetes, a warning on salt and any product containing salt for those who may have diagnosed and undiagnosed high blood pressure, a warning on peanuts and peanut butter that it is dangerous for those with known and unknown peanut allergies, a warning on cola, tea, and coffee that the caffeine in these products may cause adverse health effects, a warning on orange juice that it can contribute to acid reflux discomfort, a warning on products with cholesterol as to the effects of high cholesterol, and so forth. Moreover, in the case of lactose intolerance, plaintiffs do not make allegations of reactions resulting in permanent injury, but instead take issue with essentially transient symptoms. Flatulence, bloating and diarrhea may be uncomfortable conditions, but they hardly rise to the level of "unreasonably dangerous" consequences.

As the United States District Court for the Southern District of New York has noted in the McDonald's fast-food litigation, quoting from the Restatement (Second) of Torts:

> Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to some diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by "unreasonably dangerous"... . The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

*Pelman v. McDonald's Corp.,* 237 F. Supp. 2d 512, 531 (S.D.N.Y. 2003), *quoting*, Restatement (2d) of Torts, § 402A, comment I. *See also Bruner v. Anheuser Busch, Inc.,* 153

F. Supp. 2d 1358 (S.D. Fla. 2001)(dismissing lawsuit against beer producer since the dangers of alcohol abuse are common knowledge and therefore product is not unreasonably dangerous as defined by the Restatement (Second) of Torts).

Plaintiffs allege that the milk industry and the government's marketing efforts have covered up the issue of lactose intolerance. Complaint at ¶ 6. Milk has been a part of the human diet since before recorded history. To suggest that milk is an unreasonably dangerous product due to a hidden defect, and that the community is unaware of lactose intolerance, is simply frivolous. Both counts of the lawsuit should be dismissed at the outset.

### B. The Individual Plaintiffs Are Not Entitled to a Monetary Judgment Against Cloverland Farms

The individual Plaintiffs allege that they are entitled to damages of less than $100,000 because they purchased and consumed milk sold in the District of Columbia and were injured as a result of this milk consumption. Complaint ¶ 28. Although plaintiffs have alleged that defendant Cloverland sells millions of dollars worth of milk in grocery stores in Washington D.C., Complaint ¶ 28, the individual plaintiffs have not alleged that they purchased milk sold by Cloverland.

In order for the individual plaintiffs to recover under their count of Negligence with respect to defendant Cloverland, plaintiffs would have to show that Cloverland had a duty to warn them of the alleged dangers, that Cloverland failed to provide an adequate warning, and that this breach of duty proximately caused plaintiffs' alleged injuries. "A plaintiff must introduce evidence which affords a reasonable basis for the belief that it is 'more likely than

not that the conduct of the defendant was a *substantial factor'* in bringing about the harm at issue." *McNeal v. Hi-Lo Powered Scaffolding, Inc.,* 836 F.2d 637, 644 (D.C. Cir. (1988), *quoting Lacy v. District of Colombia,* 424 A.2d 317, 318 (D.C. 1980)(emphasis in original).

The allegations in the complaint are not sufficient to meet this standard. Since plaintiffs have not alleged that they ever consumed milk sold by Cloverland Dairy, plaintiffs cannot show that defendant's conduct was a substantial cause in bringing about any of their alleged injuries. Absent wild speculation, no reasonable person could find causation based on the facts alleged in the complaint. As such, Count I of the Complaint must be dismissed.

**C.     The Plaintiffs Are Not Entitled to Injunctive Relief**

Plaintiffs allege that they are entitled to injunctive relief. They request that defendants be enjoined from marketing their products in the District of Columbia until they include warning labels to alert consumers about the possible risk of lactose intolerance. Plaintiffs suggest warnings such as the following on all milk sold in the District of Columbia:

> **WARNING - IF YOU EXPERIENCE DIARRHEA OR STOMACH CRAMPS AFTER CONSUMING MILK, YOU MAY BE LACTOSE INTOLERANT. CHECK WITH YOUR PHYSICIAN.**
>
> **WARNING - LACTOSE INTOLERANT INDIVIDUALS MAY EXPERIENCE BLOATING, DIARRHEA, OR OTHER GASTROINTESTINAL DISCOMFORT FROM CONSUMING MILK.   CHECK WITH YOUR PHYSICIAN.**

Complaint ¶ 69. Besides the fact that one would imagine that a reasonable prudent consumer who experiences frequent diarrhea and stomach cramps would consult with his physician

without having to be told to consult with his physician, it is clear, however, that the plaintiffs are not entitled to injunctive relief.

This Court has found that in determining whether to enter a permanent injunction, the court considers a modified iteration of the factors it utilizes in evaluating claims for preliminary injunctions:

1. the likelihood that plaintiff will succeed on the merits;

2. whether plaintiffs will suffer irreparable injury absent the injunction;

3. whether, balance in the hardships, there is harm to the defendants or other interested parties; and

4. whether the public interest favors granting the injunction.

*ACLU v. Mineta,* 319 F. Supp. 2d 69, 87 (D.D.C. 2004). The distinction between a preliminary injunction and a permanent injunction is that for a preliminary injunction, plaintiff must show a likelihood of success on the merits rather than actual success. *Id.*

In applying these factors, it is clear that the plaintiffs are not entitled to injunctive relief.

### 1. Success on the Merits

Since plaintiffs seek a permanent injunction, they would actually have to achieve success on the merits before being granted an injunction. Even if successful, however, as shown below, plaintiffs are unable to satisfy the other elements required for the granting of a permanent injunction.

**2.     Irreparable Injury**

All of the named plaintiffs are lactose intolerant and obviously do not seek injunctive relief for themselves since presumably they are aware of their condition and need no warning with respect to their consumption of milk. With respect to the class that the plaintiffs allegedly represent, i.e., District of Columbia residents who are unaware that they are lactose intolerant, although plaintiffs have alleged that the members of this class may experience flatulence, bloating, stomach cramps, and diarrhea, plaintiffs have not alleged that these class members will suffer irreparable injury if an injunction is not granted.

The plaintiffs must not just show inconvenience or injury, rather, they must show *irreparable injury*. Plaintiffs have failed to make any such allegation.

**3.     Harm to Defendants and Other Parties If the Injunction Is Granted**

It is clear that defendant and other parties will be harmed if defendant is enjoined from selling milk in the District of Columbia until warning labels are put on milk. First, as shown below, the public would be harmed by such an injunction. Second, defendants would also be harmed. As noted in the Notice of Removal of this case, the costs of producing specially labeled milk for sale in the District of Columbia would be prohibitively expensive. Moreover, if milk required a warning, wouldn't every single product that contains milk and is sold in the District of Columbia require a similar warning? This would include cheese, pizza, ice-cream, candy, cookies, cake, bread, and many other products found in the aisles of the supermarket.

      **4.**      **Public Interest**

The public interest will not be served by the entry of an injunction in favor of the plaintiffs for several reasons. The warnings that plaintiffs propose may actually be counter to the public interest. For example, a person may have a serious medical condition which produces bloating and diarrhea and the warning that plaintiffs suggest may erroneously lead the consumer to believe that he is lactose intolerant, perhaps causing him to forego necessary medical evaluation. As discussed below, whether a label change is appropriate, and if so, how that label should read, is within the province of the federal agency vested with responsibility for safeguarding the public health. Neither plaintiffs nor this Court have the expertise to mandate what that should be.

      **C.**      **The Federal Government Has Primary Jurisdiction to Make Determinations Regarding Food Safety and Labeling of Food**

The Secretary of Health and Human Services has the responsibility to act to protect the nation's health. Pursuant to the Federal Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*(2005), the federal Food and Drug Administration ("FDA") has been given authority to enforce the Act in the public interest.

The term "food" is defined in the FDCA to include "articles used for food or drink for man or other animals." 21 U.S.C. § 321(f). "Milk" is defined in section 321c as "Sweet milk of cows." Section 331 prohibits the misbranding of any food introduced into interstate commerce. *See also* 21 U.S.C. § 343 (Misbranded Food). The FDCA grants the FDA limited authority to require labeling. 21 U.S.C. § 321(n). This section provides that food

shall be deemed misbranded if their labeling "fails to reveal facts...material with respect to consequences which may result from the use of the article to which the labeling... relates under the conditions of use prescribed in the labeling...or under such conditions of use as are customary or usual." *Id., as quoted in Alliance for Bio-Integrity v. Shalala,* 116 F. Supp. 2d 166, 178 (D.D.C. 2000).

With respect to milk, it is clear that this is a product within the FDA's jurisdiction. Indeed, the Food and Drug Administration has issued regulations in the past regarding health issues associated with milk and milk products. *Public Citizen v. Heckler,* 602 F. Supp. 2d 611 (D.D.C. 1985) (regarding domestic sales of raw milk and raw milk products). Starting in 1998, the FDA required the labeling of fat-reduced milk products to give consumers more accurate useful information about milk. P. Kurtzwell, *Skimming the Milk Label: Fat-Reduced Milk Products Join the Food Labeling Fold,* U.S. Food & Drug Administration, FDA Consumer (January - February 1998), http://www.cfsan.fda.gov/dms/fdamilk.html. Recently, subsection (q)(q) of the Act, which applies to food that is labeled on or after January 1, 2006, defines the term "major food allergen" to include milk, along with several other products. Section 203(d) of Act Aug. 2, 2004, P.L. 108-282, which appears as 21 U.S.C.S. § 321 note.

The FDA along with the United States Department of Agriculture issue regulations to safeguard the health of American in connection with many types of food. *See, e.g., Community Nutrition Institute v. Block,* 242 U.S. App. D.C. 28, 749 F.2d 50 (D.D.C. 1984)

11

(legal requirements for the content and labeling of meat products); *Alliance for Bio-Integrity v. Shalala,* 116 F. Supp. 2d 166 (D.D.C. 2000) (policy regarding genetically modified food); *Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp,* 626 F. Supp. 278 (D. Mass. 1986) (dismissing complaint seeking order compelling defendant to disclose to consumers methods of raising calves).

As the United States Court of Appeals for the District of Columbia Circuit noted in connection with the issues of nitrates in food, these present difficult medical and scientific questions. "Such questions go beyond our competence, and we must defer to the administrative agencies with their technical expertise on these matters." *Silverman v. Foreman,* 203 U.S. App. D.C. 387, 631 F.2d 969, 977 (D.C. Cir. 1980). *See also Committee for Accurate Labeling & Marketing v. Brownback,* 665 F. Supp. 880 (D. Kn. 1987) (state requirements regarding labeling of artificial dairy products obstructed FDA regulations and violated Supremacy Clause).

It is clear that the FDA is the appropriate entity within the federal government to deal with the issues raised in plaintiff's complaint and to determine whether there are any health risks associated with milk which require any action, be it a particular labeling requirement, public education, or any other action the FDA may determine is appropriate .

## **CONCLUSION**

For all of the foregoing reasons, the defendant, Cloverland Farms Dairy, Inc., respectfully requests that its Motion to Dismiss be granted.

Respectfully submitted,

GAVETT AND DATT, P.C.

BY     /s/
Geoffrey S. Gavett, Federal Bar No. 1997
15850 Crabbs Branch Way
Suite 180
Rockville, Maryland 20855-2622
(301) 948-1177
**Counsel for Defendant**
**Cloverland Farms Dairy, Inc.**

F:\Data\GD\Insurance\04.000\4-00107\pleadings\federal\Motion-to-Dismiss.wpd