**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MILTON MILLS, M.D., RASHID GHOLSON, HUA-WEI CHERNG, NORMA HUMPHRIES, LYNETTE GARNER, DARRELL BRANSOME, PAUL MILLER, GLENDA COSTNER, SYBIL HAROLD, ELIZABETH RUSSELL, for themselves and on behalf of all other District of Columbia residents similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>GIANT OF MARYLAND, LLC, SAFEWAY INC., HORIZON ORGANIC, DEAN FOODS CO., NESTLE HOLDINGS, INC., FARMLAND DAIRIES, LLC, SHENANDOAH'S PRIDE, LLC, STONYFIELD FARM, INC., CLOVERLAND FARMS DAIRY, INC.,<br><br>        Defendants. | Case No.: 05-CV-2211 (HHK)<br><br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

Steven J. Rosenbaum (D.C. Bar No. 331728)
Derron J. Blakely (D.C. Bar No. 483733)
Nadia I. Shihata (D.C. Bar No. 493448)
COVINGTON & BURLING
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 662-6000

Attorneys for Defendants Giant Of Maryland, LLC, Safeway Inc., Horizon Organic Holding Corporation, Dean Foods Company, Nestle Holdings, Inc., Farmland Dairies, LLC, Shenandoah's Pride, LLC, and Stonyfield Farm, Inc.

# TABLE OF CONTENTS

I.     **PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BY THE FEDERAL FOOD, DRUG & COSMETICS ACT.** ..................................... 1

     A.     **The FD&C Act Preemption Provision Bars Plaintiffs' Claims.** ...................... 1

     B.     **The Narrow Exception to the FD&C Act Preemption Provision Does Not Apply.** ............................................................................................... 5

II.     **THE VERY PURPOSE OF PLAINTIFFS' LAWSUIT IS TO THWART THE ACCOMPLISHMENT AND EXECUTION OF FEDERAL OBJECTIVES.** ............................................................................................... 7

III.     **THE COMPLAINT SHOULD ALSO BE DISMISSED ON GROUNDS OF PRIMARY JURISDICTION.** ................................................................. 11

IV.     **PLAINTIFFS HAVE NOT STATED A CLAIM FOR RELIEF UNDER D.C. LAW.** ........................................................................................................ 15

V.     **PLAINTIFFS CANNOT ESTABLISH A RIGHT TO INJUNCTIVE RELIEF.** ...................................................................................................... 17

VI.     **THE RELIEF PLAINTIFFS SEEK WOULD VIOLATE THE DISTRICT OF COLUMBIA SELF-GOVERNMENT AND GOVERNMENTAL REORGANIZATION ACT.** ............................................................................ 19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.W. Chesterton Co. v. Chesterton*, 128 F.3d 1 (1st Cir. 1997) .......................................17

*Allnet Communication Serv., Inc. v. National Exchange Carrier Association*, 965 F.2d 1118 (D.C. Cir. 1992)................................................................................13

*American Council of Life Insurance v. District of Columbia*, 645 F. Supp. 84 (D.D.C. 1986) .............................................................................................20

*Bates v. Dow Agrosciences LLC*, 125 S. Ct. 1788 (2005) ...................................1, 2, 3, 4, 5

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989)..............................10

*Building & Construction Trades Council v. Associated Builders & Contractors of Massachusetts*, 507 U.S. 218 (1993) ............................................................8

*CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) .......................................20

*CSX Transp., Inc. v. Williams*, No. 05-338EGS, 2005 WL 902130 (D.D.C. Apr. 18, 2005)................................................................................................20

*Chevron U.S.A., Inc v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).................................................................................................6

*City of Charleston, South Carolina v. A Fisherman's Best, Inc.*, 310 F.3d 155 (4th Cir. 2002) ............................................................................................8

*Cruz v. America Airlines, Inc.*, 356 F.3d 320 (D.C. Cir. 2004) .......................................18

*Dimond v. District of Columbia*, 618 F. Supp. 519 (D.D.C. 1984) ..................................20

*Does I Through III v. District of Columbia*, 216 F.R.D. 5 (D.D.C. 2003) .......................17

*Fidelity Federal Sav. & Loan Association v. De la Cuesta*, 458 U.S. 141 (1982) ...........11

*Garrison v. Heublein, Inc.*, 673 F.2d 189 (7th Cir. 1982) ................................................15

*Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291 (7th Cir. 1997)................................10

*Jones v. Rath Packing Co.*, 430 U.S. 519 (1977)................................................................3

*National Broiler Council v. Voss*, 44 F.3d 740 (9th Cir. 1994).........................................3

*Purepac Pharm. Co. v. Torpharm, Inc.*, 354 F.3d 877 (D.C. Cir. 2004)..........................6

*Self v. BellSouth Mobility, Inc.*, 111 F. Supp. 2d 1169 (N.D. Ala. 2000)........................14

*Taylor v. Gabelli*, 345 F. Supp. 2d 340 (S.D.N.Y. 2004) ..................................................13

*Unimat, Inc. v. MCI Telecommunications Corp.*, No. 92-5941, 1992 WL 391421
    (E.D. Pa. Dec. 16, 1992) .......................................................................................14

*United Distrib. Cos. v. FERC*, 88 F.3d 1105 (D.C. Cir. 1996).........................................10

*Wells v. Allstate Insurance Co.*, 210 F.R.D. 1 (D.D.C. 1992) ..........................................20

*Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491 (10th Cir. 1996).................14

*Witty v. Delta Air Lines, Inc.*, 366 F.3d 380 (5th Cir. 2004) .............................................9

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985)...........................................17

*Witczak v. Pfizer, Inc.*, 377 F. Supp. 2d 726 (D. Minn. 2005)...........................................5

## STATE CASES

*Allen v. Grafton*, 164 N.E.2d 167 (Ohio 1960)..................................................................16

*Brown v. McDonald's Corp.*, 655 N.E.2d 440 (Ohio Ct. App. 1995) ..............................16

*Boyle v. Giral*, 820 A.2d 561 (D.C. 2003)........................................................................20

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 6 Cal. Rptr. 2d 193
    (Cal. Ct. App. 1992)................................................................................................5

*East Penn Mfg. Co. v. Pineda*, 578 A.2d 1113 (D.C. 1990).............................................15

*Edwards v. Hop Sin, Inc.*, 140 S.W.3d 13 (Ky. Ct. App. 2004) .......................................16

*Heller v. Coca-Cola Co.*, 230 A.D.2d 768 (N.Y. App. Div. 1996) ..................................14

*Livingston v. Marie Callender's, Inc.*, 85 Cal. Rptr. 2d 528 (Cal. Ct. App. 1999)...........16

*McConnell v. United States*, 537 A.2d 211 (D.C. 1988) ..................................................19

*Rastall v. CSX Transp., Inc.*, 697 A.2d 46 (D.C. 1997)....................................................20

## FEDERAL STATUTES

Dairy Product Stabilization Act of 1983, 7 U.S.C. § 4501 *et seq* ......................................9

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq* ................................1, 2, 3

Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 *et seq* ......................1

Fluid Milk Promotion Act of 1990, 7 U.S.C. § 6401 *et seq* ...............................................9

15 U.S.C. § 1012.................................................................................................................20

## FEDERAL REGULATIONS

7 C.F.R. § 1160.111 ..............................................................................................................9

7 C.F.R. § 1160.209(d) .........................................................................................................9

21 C.F.R. § 10.30(b) ...........................................................................................................14

21 C.F.R. § 10.33(b) ...........................................................................................................14

21 C.F.R. § 100.1(c)(4) .........................................................................................................3

21 C.F.R. § 101.17 ................................................................................................................6

21 C.F.R. Part 131.................................................................................................................3

58 Fed. Reg. 2,850 (Jan. 6, 1993) ...................................................................................4, 10

61 Fed. Reg. 3,118 (Jan. 30, 1996) ......................................................................................6

68 Fed. Reg. 46,364 (Aug. 5, 2003).....................................................................................6

## MISCELLANEOUS

Restatement (Second) of Torts (1965)..................................................................................16

Restatement (Third) of Torts (1998) ....................................................................................17

United States Dep't of Agriculture & Dep't of Health and Human Services,
    *Dietary Guidelines for Americans* (2005).....................................................................9

World Health Organization, Fact Sheet No. 237 (rev. Jan. 2002) ........................................7

World Health Organization, Water-related diseases: Diarrhoea........................................7

Defendants demonstrated in their opening memorandum that the Complaint should be dismissed on six independent grounds. Plaintiffs' opposition does nothing to change that conclusion.

Indeed, like a patient undergoing a Rorschach test, plaintiffs cannot help but reveal their motives and intent -- to challenge and thwart federal policy promoting milk consumption, and to advance a reordering of the American diet in which plant-based foods take the place of milk consumption. Moreover, as predicted in Defendants' opening brief, plaintiffs are unable to cite a single judicial decision from any jurisdiction holding that the sale of unadulterated, properly identified basic foods is tortious unless accompanied by warnings. For these and the other reasons set forth in the opening brief and herein, the Complaint should be dismissed.

## I.    PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BY THE FEDERAL FOOD, DRUG & COSMETIC ACT.

### A.    The FD&C Act Preemption Provision Bars Plaintiffs' Claims.

As demonstrated in Defendants' opening brief at pp. 5 to 17, plaintiffs' claims are barred by the express preemption provisions of the Federal Food, Drug and Cosmetics Act ("FD&C Act"). Numerous decisions have applied the preemption provisions of the FD&C Act and other federal statutes to dismiss claims comparable to those brought here, *see id.* at pp. 5-11.

Plaintiffs' opposition rests almost exclusively upon *Bates v. Dow Agrosciences LLC*, 125 S. Ct. 1788 (2005), but that Supreme Court decision fully supports Defendants' express preemption arguments. *Bates* concerned the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), which provides that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter," *i.e.*, under FIFRA. 7 U.S.C. § 136v(b). Noting that FIFRA does not itself

prescribe the labeling language that a manufacturer must use, and that FIFRA itself contains a prohibition against misbranding, the Supreme Court held that state common law labeling requirements could survive *if* they "are equivalent to FIFRA's misbranding standards." *Bates*, 125 S. Ct. at 1800. The Court admonished that FIFRA "pre-empts any statutory or common-law rule that would impose a labeling requirement that diverges from those set out in FIFRA and its implementing regulations." *Id*. at 1803; *see also id.* at 1804 ("[A] manufacturer should not be held liable under a state labeling requirement subject to § 136v(b) unless a manufacturer is also liable for misbranding as defined in FIFRA.")

Application of these principles to the instant lawsuit requires dismissal of plaintiffs' claims, for three independent reasons.

*First,* the FD&C Act's preemption provision provides much less leeway for state labeling requirements than the FIFRA provision at issue in *Bates*. As noted, FIFRA allows a state to impose labeling requirements that are equivalent to those required under FIFRA *as a whole* ("this subchapter"). This allows a state to impose labeling requirements that are equivalent to those imposed under any FIFRA provision, including the FIFRA provision that prohibits misbranding.

By contrast, the FD&C Act only allows states to retain labeling requirements identical to the standards of identity established by the FDA (with respect to those limited number of foods for which a standard of identity has been established). The relevant FD&C Act provision prohibits "*any [state] requirement* for a food which is the subject of a standard of identity established under section 341 of this title *that is not identical to such standard of identity.*" 21 U.S.C. § 343-1 (emphasis added). Thus, a state's "freedom to operate" under the FD&C Act only extends to labeling requirements **that are identical to those set forth in the**

*federal standards of identity established under Section 401*.  With respect to foods for which a standard of identity has been established, the state's authority does not extend to labeling requirements that might be covered by the FD&C Act's misbranding provision, 21 U.S.C. § 321(n), because the FD&C Act's misbranding provision is not part of Section 401.  *See generally Bates*, 125 S. Ct. at 1800 (courts must "pay[] attention to the...textual differences between …preemption clauses").

  *Second,* the *Bates* court repeatedly emphasized that a state labeling requirement would *not* survive if it imposed "a labeling requirement that diverges from those set out in FIFRA *and its implementing regulations*."  125 S. Ct. at 1803 (emphasis added); *see also id.* at 1804 (state requirement that a product be labeled "Danger" would be preempted by specific federal regulation permitting the use of the phrase "Caution").  Here, unlike in FIFRA, there *are* implementing regulations that: (a) precisely prescribe the labeling language that is to appear on milk, *see* 21 C.F.R. Part 131, and (b) explicitly forbid a state from adopting any additional labeling requirements without prior FDA approval, *see* 21 C.F.R. § 100.1(c)(4) (2005) (a state requirement *may not "impose obligations or contain provisions concerning* the composition or *labeling of food...that are not imposed by or contained in the applicable provision (including any implementing regulations) of section 401…*" (emphasis added).  The labeling plaintiffs seek unquestionably "diverge[s] from those set out in [these] implementing regulations," *see Bates,* 125 S. Ct. at 1803, and are accordingly preempted under the *Bates* test.[1]

---

[1] Plaintiffs attempt to distinguish *Jones v. Rath Packing Co.,* 430 U.S. 519 (1977), and *National Broiler Council v. Voss*, 44 F. 3d 740 (9th Cir. 1994), on the ground that they involved labeling requirements that were clearly "different from" the federal requirements.  (Pl. Opp. 12). But those cases merely addressed minor variations between federal and state requirements regarding  whether moisture losses are excluded in calculating net weight, and the exact temperature at which products may be stored and still be labeled "fresh."  The stringent lactose (continued…)

*Third,* even if state authority to promulgate labeling requirements *did* encompass the FD&C Act's misbranding provision, and even if FDA had not promulgated specific regulations regarding milk labeling, a manufacturer could "not be held liable under a state labeling requirement…unless a manufacturer is also liable for misbranding as defined in" the FD&C Act. *See Bates,* 125 S. Ct. at 1804. But the FDA has *already* definitively ruled that lactose intolerance labeling is *not* required under the provisions of the FD&C Act. Specifically, FDA has *rejected* a proposal that products that are lactose free be so labeled because (according to the proponent) "the high percentage of the population that suffers from lactose intolerance warrants such a requirement." 58 Fed. Reg. 2,850, 2,859 (Jan. 6, 1993). FDA rejected this proposal "because lactose intolerant consumers know to avoid milk and milk products." *Id.* FDA reached that conclusion in the course of promulgating food labeling regulations with an explicit eye toward the FD&C Act's misbranding prohibitions. *See, e.g.*, 58 Fed. Reg. at 2,855, 2,861, 2,863, 2,865, 2,867.[2]

Plaintiffs also cite *Bates* for the proposition that a jury verdict that might motivate a manufacturer to exercise the option of changing its labeling is not a "requirement" subject to the federal preemption provision. (Pl. Opp. 7, 8). However, that comment was made in the *Bates* discussion of claims that do not directly address product labeling, such as one for product design. *Bates*, 125 S. Ct. at 1798-99. The *Bates* Court explained that a common law claim premised on the alleged failure to warn, as has been asserted here, does constitute a

---

intolerance warning labeling plaintiffs seek to impose here are by contrast utterly and completely "different from" that required by the federal standards of identity.

[2]     Plaintiffs' observation (Pl. Opp. 18) that this statement was made in the context of labeling for food ingredients is irrelevant, given that FDA's conclusions were explicitly directed to "milk and milk products," 58 Fed. Reg. 2,850, 2,859 (Jan. 6, 1993).

"requirement" for purposes of a federal preemption provision.  *Id.* at 1799-1800.  Indeed, while plaintiffs state that "this Court must first determine whether the challenged prohibition is a 'requirement'" (Pl. Opp. 8), plaintiffs themselves later state that the only claims they have asserted -- for negligent failure to warn and products liability -- do "impose 'requirements' with respect to milk…."  (*id.* at 9).

Finally, the two labeling decisions cited in support of plaintiffs' position (Pl. Opp. 13-14) have no bearing on the express preemption issues presented here.  *Witczak v. Pfizer, Inc.*, 377 F. Supp. 2d 726 (D. Minn. 2005), dealt with prescription drugs, which are not the subject of any express preemption provisions under the FD & C Act.  And while *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 6 Cal.  Rptr. 2d 193 (Cal. Ct. App. 1992), did involve milk, it involved conduct undertaken and injunctive relief granted before the preemption provisions of the FD&C Act were enacted, *see* Def. Br. 5-6.  Accordingly, no federal preemption issues were raised in the case or discussed in the opinion.

## B.    The Narrow Exception to the FD&C Act Preemption Provision Does Not Apply.

As demonstrated in Defendants' opening brief at 11-17, the narrow exception to the FD&C Act's sweeping preemption provision does not apply here because statements about the gastrointestinal discomfort purportedly caused by lactose intolerance do not under the FD&C Act constitute warning statements about food "safety."  Plaintiffs' assertion that "Defendants provide no authoritative support" for that proposition (Pl. Opp. 14) is belied by Defendants' copious citations to both FDA's extensive decision-making regarding the meaning of "food

safety" under the FD&C Act and FDA's specific conclusion that gastrointestinal discomfort does not rise to the level of a food safety issue.[3]

The substances and foods that FDA has found to create a "safety" concern do not merely inflict gastrointestinal discomfort or even *distress*; instead, they create a "serious risk," "serious allergic-type responses," "serious illness or death" due to "cardiac arrhythmias," "fatal poisoning," "kidney failure, edema in the lung, hemorrhage, coma from damage to the brain," and "risk of serious illness or death" from pathogens such as *Salmonella enteridis*, *Escherichia coli* O157:H7, *Vibrio cholerae*, for example. Def. Br. 14-15. *These* are the types of harmful effects for which FDA requires warning statements about the safety of a food. *See e.g.,* 21 C.F.R. § 101.17 (2005). FDA's views on these issues must be accorded substantial deference. *Chevron U.S.A., Inc v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984); *Purepac Pharm. Co. v. Torpharm, Inc.*, 354 F.3d 877, 883 (D.C. Cir. 2004) ("FDA interpretations of the [FD&C Act] receive deference").

It is the plaintiffs who lack any "authoritative support" for a result different than that dictated by FDA's food safety decision-making. Confronted with the incontestable proof that food "safety" does not encompass the "undesirable effects" their Complaint alleges, plaintiffs now inflate their own allegations, claiming that "they have alleged serious bouts of diarrhea" and that "diarrhea can be, and especially in developing countries, often is, fatal." Pl. Opp. 14-15. However, not one plaintiff alleged that he or she suffered from "serious" or "extreme" -- much less life-threatening -- diarrhea as a result of lactose intolerance.

---

[3]     Contrary to Plaintiffs' mischaracterization (Pl. Opp. 15), FDA explicitly concluded that the gastrointestinal effects, including diarrhea, caused by olestra did not present a food "safety" concern. 61 Fed. Reg. 3,118, 3,159-61 & n. 83 (Jan. 30, 1996); 68 Fed. Reg. 46,364, 46,385 n. 45 (Aug. 5, 2003).

Indeed, plaintiffs' reliance upon the life-threatening diarrhea experienced in developing countries exposes the vacuity of their position. The incidence and severity of diarrhea in developing countries are due to foodborne illnesses and infectious diseases caused by viruses, bacteria, and other pathogens, not an inability to digest lactose.[4]

Plaintiffs' claims, even taken at face value, do not fall within the limited preemption exception. Their claims are accordingly expressly preempted.

## II.    THE VERY PURPOSE OF PLAINTIFFS' LAWSUIT IS TO THWART THE ACCOMPLISHMENT AND EXECUTION OF FEDERAL OBJECTIVES.

As noted in Defendants' opening brief at 17, the express preemption provision of the FD&C Act explicitly provides that it does not displace conflict preemption arising under other provisions of the FD&C Act or other federal law. Plaintiffs freely admit that they are at war with federal policy and through this lawsuit seek to achieve a reordering of the American diet in which nutrient-dense plant-based foods take the place of milk consumption.

That intent was exhibited in the Complaint itself, *see, e.g.,* Compl. ¶ 6 ("government support of milk gives the false impression that cows' milk is a necessary part of a healthy diet, both for children and adults"); ¶ 7 ("For humans, cows' milk consumption causes a host of problems that make it anything but a healthy beverage."); ¶ 11 ("a diet free of dairy products is healthier for children and adults"); ¶ 48 (consumers can obtain "all of the nutrients found in milk by consuming nutrient-dense plant-based foods"); ¶ 49 (milk is promoted "as part

---

[4]    *See, e.g.,* World Health Organization, Fact Sheet No. 237, Food safety and foodborne illness (rev. Jan. 2002), *available at* http://www.who.int/mediacentre/factsheets/fs237/en/ (citing causes of diarrhea, including Salmonellosis, Campylobacteriosis, Listeriosis, Cholera, toxins, persistent organic pollutants, and metals such as lead and mercury); World Health Organization, Water-related    diseases:    Diarrhoea,    *available    at* http://www.who.int/water_sanitation_health/diseases/diarrhoea/en/ (last visited Jan. 11, 2006) ("Diarrhoea is a symptom of infection caused by a host of bacterial, viral and parasitic organisms most of which can be spread by contaminated water.").

of a healthy diet by … government"); ¶ 51 (consumers are "bombarded by the milk-promoting messages of the federal government").

Plaintiffs' intent is further confirmed by their opposition brief.  *See, e.g.,* Pl. Opp. 2 ("The industry's milk marketing campaign, *combined with government support of milk*, gives the false impression that cows' milk is a necessary part of a healthy diet, both for children and adults"; "the true scope of the [lactose intolerance] problem has been covered up by the milk industry and *government's marketing efforts*") (emphasis added).

Indeed, **plaintiffs are explicit in their intention through this litigation to challenge federal policy.**  Plaintiffs assert that consumers are "[b]ombarded by the milk-promoting messages *of the federal government* … designed to fool them into purchasing milk for its purported health benefits" -- **and that this federal policy renders "the need for warning labels…clear."**  *Id.* at 5 (emphasis added).

This case thus closely resembles *City of Charleston, South Carolina v. A Fisherman's Best, Inc.*, 310 F.3d 155, 174-75 (4th Cir. 2002), in which the court observed:

> Motive or purpose for action may be relevant in determining whether preemption applies.  *Building & Construction Trades Council v. Associated Builders & Contractors of Massachusetts,* 507 U.S. 218, 228-29, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993). The mayor's statements, correspondence with citizens, his radio address, and his testimony in his deposition show that actions by the City were intended to limit or terminate longline fishing for swordfish in the Charleston area….
>
> ***
>
> The City's resolution, enacted by a single city council and relating to a single limited coastal area, attempted to impose standards for longline swordfish vessels and tackle in the area.  The resolution conflicted with…Congressional determinations and therefore is preempted.
>
> ***

> [T]he City's resolution undercuts the finding by Congress…that fish off the coast of the United States and the highly migratory species of the high seas constitute valuable and renewable natural resources that contribute to the food supply, economy and health of the nation.

*Two* separate federal statutes spell out Congress' objective of promoting milk consumption, not simply to support U.S. farmers and agriculture as plaintiffs suggest (*see* Pl. Opp. 17), but rather for the *express purpose* of ensuring "that the people of the United States receive adequate nourishment."  *See* 7 U.S.C. § 4501(a); 7 U.S.C. § 6401(a); *see also* 7 U.S.C. § 4501(a) ("[D]airy products are basic foods that are a valuable part of the human diet."); 7 U.S.C. § 6401(a) (fluid milk products "are a primary source of required nutrients such as calcium, and otherwise are a valuable part of the human diet").  Congress established the National Fluid Milk Processor Promotion Board for the purpose of "promot[ing] the use of fluid milk and dairy products," "educating consumers about the desirable characteristics of fluid milk products" and "increasing the general demand for fluid milk products."  *See* 7 U.S.C. § 4504(b); 7 C.F.R. §§ 1160.209(d), 1160.111 (2005).[5]

Plaintiffs repeatedly make plain that their lawsuit is specifically designed to undercut federal policy by using state law to require warnings characterizing milk consumption as hazardous, thus directly contradicting Congress' assessment that milk is a healthy and valuable part of the human diet, the consumption of which should be promoted.  *Cf. Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 385 (5th Cir. 2004) ("In this case, the conflict is more than

---

[5]    While plaintiffs assert that their lawsuit is consistent with the federal government's "interest in protecting the health of all its citizens"  (Pl. Opp. 17), they refuse to acknowledge that the federal government expressly promotes milk consumption *because* of its concern for the health of its citizens.  *See, e.g.,* United States Dep't of Agriculture & Dep't of Health and Human Services, *Dietary Guidelines for Americans*, at 23 (2005) ("Increased intakes of … fat-free or low-fat milk and milk products are likely to have important health benefits for most Americans.").

theoretical, since [plaintiff] claims that a [deep vein thrombosis] warning should have been given, while federal regulations do not require such a warning.  And any warning that passengers should not stay in their seats, but should instead move about to prevent DVT, would necessarily conflict with any federal determination that, all things considered, passengers are safer in their seats."). [6]

Furthermore, the federal government has specifically determined that labeling regarding the presence of lactose is not necessary because "lactose intolerant consumers know to avoid milk and milk products."  58 Fed. Reg. 2,850, 2,859 (Jan. 6, 1993). [7]  While plaintiffs are certainly free to disagree with this formally-stated federal assessment, they may not use state law to require lactose labeling that the federal government has explicitly determined is not appropriate.  *See* Pl. Opp. 22;  *see also Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 297 (7th Cir. 1997) (federal agency's conscious decision to exclude certain vehicles from windshield retention requirements constitutes affirmative decision that no standard should apply to such vehicles).   In this context, the federal government's concerns over the risks of over-warning consumers add an extra layer to the preemption argument.  *See, e.g.,* 58 Fed. Reg. at 2,872; Def. Br. 22-24.

Plaintiffs contend that FDA's statement regarding lactose intolerance did not constitute a "determination to preempt the field" (Pl. Opp. 19), but field preemption is a different

---

[6]    Plaintiffs seek to distinguish *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989), on the ground that the state law at issue there conflicted with federal objectives expressed not only in federal statutes but also in the U.S. Constitution.  (Pl. Opp. 18 n.4).  But federal policy is preemptive whether expressed in the Constitution, a federal statute, or a federal regulation.  *United Distrib. Cos. v. FERC*, 88 F.3d 1105, 1155-56 (D.C. Cir. 1996).

[7]    As noted *supra*, while FDA made this statement while establishing dairy ingredient labeling, its statement broadly addressed "milk and milk products."

branch of preemption than the conflicts preemption implicated here.[8]   The federal government's decision to forego the listing of lactose on food labels "because lactose intolerant consumers know to avoid milk and milk products" necessarily constitutes a federal determination that the grotesque lactose *warnings* plaintiffs seek are also unnecessary for the very same reason.

## III.    THE COMPLAINT SHOULD ALSO BE DISMISSED ON GROUNDS OF PRIMARY JURISDICTION.

Plaintiffs freely admit that "FDA has scientific expertise and enforcement resources in food … labeling." Pl. Opp. 20 (internal quotation marks omitted).  That is precisely what this lawsuit is about.  Their assertion that their lawsuit presents nothing more than a run-of-the-mill products liability claim that could not possibly benefit from FDA's technical and policy expertise is not credible.

This lawsuit is extraordinary in both the type of mandatory relief it seeks and the motivations underlying it.  Plaintiffs are not simply private individuals pursuing damages claims for alleged physical injuries.  They are members and/or were solicited and are represented by PCRM, a group with an animal rights agenda that openly seeks, through this lawsuit and otherwise, to decrease significantly milk consumption in favor of an entirely plant-based diet. *See* Declaration of R. Douglas Rhoads ¶¶ 7-9, 23-24.

---

[8]       Federal preemption can take three forms: express, field and conflict.  Express preemption is found where Congress' intent to preempt state law is explicitly expressed in the text of a statute.  Field preemption occurs when the depth and breadth of a congressional scheme implies that Congress intended to foreclose state regulation of an entire field.  Conflict preemption occurs when the objectives of a Congressional statute are frustrated by state regulation. *Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982).  Thus, "[e]ven where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law [such as] when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quotation omitted).  Defendants here rely upon express preemption (Section I *supra*) and conflict preemption (Section II *supra*).

Plaintiffs' unsupported contention (Pl. Opp. 1 n. 1) that the Court may not consider such evidence is simply not correct. Defendants had already demonstrated in their opening brief that matters outside the pleadings, including affidavits, may appropriately be considered in deciding primary jurisdiction motions. *See* Def. Br. 2 n. 1 (citing cases). Plaintiffs neither acknowledge nor challenge this case law or counter the specific affidavit evidence submitted by Defendants.

The underlying purposes that this lawsuit seeks to achieve are especially relevant given the Complaint's contention that this lawsuit was brought to serve the health needs of minority residents of the District of Columbia, notwithstanding the federal government's explicit promotion of milk as a healthy and beneficial part of an individual's diet. In stark contrast to the Complaint's assertions and PCRM's agenda, the National Medical Association ("NMA")—the nation's largest and oldest organization addressing health issues affecting African American and underserved populations composed of more than 30,000 physicians primarily of African descent—explicitly advocates milk consumption for all African Americans to reduce chronic disease risk, and notes that the vast majority of African Americans do not consume sufficient calcium due to a lack of dairy in their diets. *See* Def. Br. 2-3.

If a substantial reordering of the American diet is to be effectuated, through mandatory warnings designed specifically to decrease milk consumption among the very populations who suffer from chronic disease risk due to insufficient dairy consumption, FDA should at least be given the opportunity to address in the first instance the risks and putative benefits of any such warning.

Application of the primary jurisdiction doctrine here would not, as plaintiffs would have it, support referral to FDA of every lawsuit alleging a warning defect. Not every

lawsuit implicates FDA's administrative discretion and technical expertise by affirmatively seeking a mandatory warning label on a product specifically promoted by the federal government for its health benefits. Plaintiffs' suit, of course, does just that, and thus requires a careful assessment of the relative risks and benefits of requiring a lactose-intolerance warning on milk products.

The instant case clearly does not raise the type of narrow factual dispute involved in the case cited by plaintiffs, *Taylor v. Gabelli*, 345 F. Supp. 2d 340, 356 (S.D.N.Y. 2004) (Pl. Opp. 24). There, the court held that determining whether defendants exercised *de facto* control over various corporations did not warrant deferral to the FCC because such a determination is a narrow one that "fails to implicate…policy considerations" and "impacts primarily, if not exclusively, the parties to the particular dispute." *Id.* at 355-56.

In stark contrast, plaintiffs' suit squarely implicates quintessential policy determinations, such as assessing the importance of milk to a healthy diet and balancing the risks and benefits of requiring a lactose-intolerance warning versus the fear that such a warning would substantially decrease milk consumption as well as undercut other warnings of a serious nature. As courts have long recognized, "[e]xpertise … is not merely technical but extends to the policy judgments needed to implement an agency's mandate." *Allnet Communication Serv., Inc. v. Nat'l Exchange Carrier Ass'n*, 965 F.2d 1118, 1120 (D.C. Cir. 1992). Moreover, unlike the *Taylor* case, this lawsuit certainly impacts more than just the named plaintiffs or even the purported class of lactose intolerant D.C. residents they purport to represent. Requiring the lactose-intolerance warnings plaintiffs seek to be placed on milk containers affects *all* consumers, whether or not they are lactose-intolerant, and has the very real potential to deter all individuals from consuming milk to the detriment of their overall health and well-being.

Plaintiffs' contention notwithstanding (*see* Pl. Opp. 23), the fact that this lawsuit asserts state law products liability claims is no barrier to application of the primary jurisdiction doctrine. Long-settled precedent applies the doctrine in precisely such circumstances. *See, e.g., Heller v. Coca-Cola Co.*, 230 A.D.2d 768, 769-70 (N.Y. App. Div. 1996) (referring food labeling issue to the FDA); *Self v. BellSouth Mobility, Inc.*, 111 F. Supp. 2d 1169 (N.D. Ala. 2000) (referral to FCC); *Unimat, Inc. v. MCI Telecommunications Corp.*, No. 92-5941, 1992 WL 391421 (E.D. Pa. Dec. 16, 1992) (same).

Plaintiffs' suggestion (Pl. Opp. 24) that it can avoid the primary jurisdiction doctrine simply by refusing to submit a petition to FDA for the relief they seek cannot be taken seriously. If that were the case, any plaintiff could readily avoid the doctrine. Indeed, as plaintiffs themselves admit (Pl. Opp. 26), the court in *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1494 (10th Cir. 1996), relied upon the *availability* of the citizens complaint process and referred the dispute to the cognizant federal agency. *See also, e.g., Heller,* 230 A.D.2d at 769-70 (referring matter to FDA in the absence of any pending agency proceeding).

Plaintiffs freely admit that they can bring the issue of lactose-intolerance warnings to FDA's attention by submitting a citizen petition with the agency, requesting that the Commissioner "issue, amend, or revoke a regulation or order or take or refrain from taking any other form of administrative action." 21 C.F.R. § 10.30(b) (2005); *see also* Pl. Opp. 24. If dissatisfied with the agency's response, plaintiffs can request reconsideration under 21 C.F.R. § 10.33(b) (2005), or seek judicial review of a final agency action, or, in appropriate circumstances, agency inaction.

Plaintiffs admit that FDA is required to respond to any citizen petition "within 180 days," and also note that "FDA's response to a petition constitutes final agency action,

reviewable in the courts under the Administrative Procedure Act. 21 C.F.R. § 10.45(d) (2005)." Pl. Opp. 24, 25 n.5. That timetable belies plaintiffs' unsupported assertion (Pl. Opp. 26-27) that requiring them to file a citizen petition with FDA could result in "a potential delay of several years" and that the Court can conclude this *class action* lawsuit more quickly and efficiently than the agency.

Plaintiffs' assertion that the administrative avenue available to it "amounts to nothing more than a letter-writing campaign" (*see* Pl. Opp. 26) is thus a gross mischaracterization of FDA's citizen petition mechanism and is belied by their very own description of the petition process.

## IV.    PLAINTIFFS HAVE NOT STATED A CLAIM FOR RELIEF UNDER D.C. LAW.

As demonstrated in Defendants' opening memorandum at 34 to 37, the Complaint fails to state a claim under D.C. law because defendants owe no duty to warn plaintiffs of the putative consequences of consuming milk. *East Penn Mfg. Co. v. Pineda*, 578 A.2d 1113, 1119-23 (D.C. 1990) (explaining requirement of a duty of "ordinary care" in both negligence and products liability cases). Where there is no such duty, a failure to warn claim should be dismissed. *See Garrison v. Heublein, Inc.*, 673 F.2d 189, 192 (7th Cir. 1982) (granting motion to dismiss because manufacturer had no duty to warn of alcohol's "common propensities.").

Plaintiffs do not dispute that many, if not all, foods carry an inherent risk of harm related to their consumption. (*See* Def. Br. 35-36). Nor do plaintiffs dispute that many food related risks are much more grave than those allegedly posed by milk. *Id*. Indeed, plaintiffs do not dispute that many foods are actually poisonous to sensitive individuals, such as strawberries to those with strawberry allergies. *Id*. Yet no court anywhere in the United States has ever required a warning label for any of these products.

*It is thus unsurprising that plaintiffs cannot cite a single judicial decision in history that supports their claim that the sale of unadulterated, properly identified basic foods is tortious unless accompanied by warnings.*  Nor could they:  no rule of law imposes such a duty to warn.  *See, e.g.*, Restatement (Second) of Torts § 402A *cmt. i* (1965) (stating that sugar, while "poison" to diabetics is not unreasonably dangerous if unaccompanied by warnings); *Allen v. Grafton*, 164 N.E.2d 167, 170 (Ohio 1960) ("If such food was reasonably fit to eat, it is difficult to see how the defendant could, apart from violation of some statute, ever be said to be negligent in selling it to for food.").

Faced with this legal vacuum, plaintiffs strain to find support for their extraordinary claims by citing irrelevant cases dealing either with contaminated food or with food to which a potentially injurious ingredient has been added wholly outside the expectation of the reasonable consumer.  For instance, in *Edwards v. Hop Sin, Inc.*, the court denied summary judgment to defendant restaurant whose oysters contained a contaminating bacterium, *Vibrio vulnificus*, having the potential to make a significant number of consumers violently ill.  140 S.W.3d 13, 16-17 (Ky. Ct. App. 2004).  In *Livingston v. Marie Callender's, Inc.*, the court denied summary judgment to defendant where the soup it affirmatively represented as "made from the freshest ingredients, from scratch, ... every day" contained an additive, monosodium glutamate, arguably not within the reasonable expectation of an ordinary consumer purchasing "scratch" made soup.  85 Cal. Rptr. 2d 528, 533-34 (Cal. Ct. App. 1999).  Finally, in *Brown v. McDonald's Corp.*, summary judgment was denied when the plaintiff suffered an adverse reaction to carrageenan, a seaweed derived additive that may cause anaphylactic shock in people with *seafood* allergies, contained in a McDonald's McLean *hamburger*.  655 N.E.2d 440, 443-44 (Ohio Ct. App. 1995).

- 16 -

None of these cases supports plaintiffs' theory that milk *labeled and sold as milk* is defective unless accompanied by a warning.

Plaintiffs' selective citation to the Third Restatement does not support their claims. The Third Restatement is entirely consistent with the Second Restatement's rule that there is no duty to warn of dangers inherent in food products such as peanuts, strawberries, sugar, or any whole food like milk. (*See* Def. Br. 35). Indeed, the comment to section 7 of the Third Restatement explains the application of section 2, relied on by plaintiffs, and demonstrates that there is no duty to warn in a case such as this:

> A food product may contain a manufacturing defect under § 2(a), as when a can of peas contains a pebble; may be defectively designed under § 2(b), as when the recipe for potato chips contains a dangerous chemical preservative; or may be sold without adequate warnings under § 2(c), as when the seller fails to inform consumers that the dye applied to the skins of oranges contains a well-known allergen.

Restatement (Third) of Torts, § 7 *cmt. a* (1998). This is not a case of a contaminant, such as a pebble, nor is it a case where the product contains an unknown and dangerous additive surprising to the ordinary consumer. Indeed, the comments plainly provide that the Restatement rule would result in a seller being liable for failing to warn of a dangerous dye applied to oranges, but not for failing to warn of an allergy to the orange itself -- even though citrus products can cause hives, migraines and eczema, *see* Def. Br. 36. The rule is no different for milk.

## V.     PLAINTIFFS CANNOT ESTABLISH A RIGHT TO INJUNCTIVE RELIEF.

A court may not issue an injunction unless the plaintiff shows a likelihood of irreparable harm. *A.W. Chesterton Co. v. Chesterton*, 128 F.3d 1, 5 (1st Cir. 1997); *accord, e.g.*, *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (injunction will not be granted unless plaintiffs show an imminent, irreparable harm is likely to occur). Irreparable harm is "'a real and immediate threat of repeated injury.'" *Does I Through III v. District of Columbia*, 216

F.R.D. 5, 10 (D.D.C. 2003) (Kennedy, J.).  Plaintiffs do not dispute the applicability of this standard to their claims for injunctive relief.  (Pl. Opp. 29).

Because the named plaintiffs are all aware of the purported effects of lactose intolerance, they are not at risk of suffering a "repeated injury."  A mandatory injunction requiring warnings about the purported dangers of lactose intolerance cannot provide them with any benefit, and thus they may not seek such relief.  *See Cruz v. Am. Airlines, Inc.*, 356 F.3d 320, 328 (D.C. Cir. 2004) (dismissing claim for prospective injunction forbidding defendants from enforcing company policy where it was unlikely that plaintiffs would suffer a future injury as a result of that policy).

Plaintiffs openly admit that the named plaintiffs cannot show a likelihood of repeated injury to themselves because they "are already aware of their lactose intolerance and need no warning with respect to consumption of milk," (Pl. Opp. 29-30).  Plaintiffs instead rely on the fact that they have filed this lawsuit on behalf of a class, which they colorfully describe as "the elephant in the room."  (Pl. Opp. 30).  But the problem for plaintiffs is that a class action cannot seek injunctive relief unless the putative class representatives themselves are entitled to injunctive relief.  *See* Def. Br. 38, *citing, e.g., Cruz*, 356 F.3d at 331.

Plaintiffs cite no cases to the contrary.  Plaintiffs instead argue that they have satisfied the "balance of harms" test.  (Pl. Opp. 30-31).  But while that test sets forth *additional* hurdles that plaintiffs must clear, those hurdles cannot substitute for the requirement that the named plaintiffs must demonstrate their own standing to seek an injunction before they can seek one on behalf of a class.  Accordingly, plaintiffs' claim for injunctive relief should be dismissed.

## VI.   THE RELIEF PLAINTIFFS SEEK WOULD VIOLATE THE DISTRICT OF COLUMBIA SELF-GOVERNMENT AND GOVERNMENTAL REORGANIZATION ACT.

Defendants demonstrated in their opening brief that the injunctive relief plaintiffs seek would violate the D.C. Home Rule Act.  While plaintiffs contend (Pl. Opp. 31-32) that the Home Rule Act's limitations apply only to the D.C. City Council, they simply ignore Defendants' demonstration (Def. Br. 40) that the Act has been applied to strike down offending substantive requirements regardless of the means by which they were adopted or imposed.  *See McConnell v. United States*, 537 A.2d 211 (D.C. 1988) (striking down requirements imposed by citizen referendum).  Plaintiffs miss-describe *McConnell* as involving an "act" of the "Council" (Pl. Opp. 33), when the decision in fact involved a citizen referendum, as both the decision and Defendants' opening brief plainly state.

The Home Rule Act sharply limits the District's powers to impose substantive requirements, *see* Def. Br. 39.  The issue accordingly is not, as plaintiffs would have it (Pl. Opp. 32), the scope of D.C. courts' judicial power to *enforce* D.C. law, but the proper scope of *D.C. law itself*.

Plaintiffs' contention that the mandatory labeling they seek conforms to the Home Rule Act because it concerns a purely local matter is belied by plaintiffs' own brief, in which they observe (at p. 31) that the costs of producing specially labeled milk for sale only in the District can be dealt with by Defendants' "placing labels on all of their products, whether sold in the District or not."  Even more pointedly, plaintiffs simply ignore that the proper labeling of milk products is a "matter of national concern" as demonstrated by FDA's jurisdiction over, and close attention to, food labeling issues (*see* Def. Br. 5-17).  That is the salient inquiry under the Home Rule Act (*see id*. at 39), and D.C. laws that affect such concerns are invalid even if they apply "only within the District's jurisdiction."  *McConnell,* 537 A.2d at 215.

None of the case law cited by plaintiffs (Pl. Opp. 33-34) is to the contrary. Plaintiffs cite *CSX Transportation, Inc. v. Williams*, No. 05-338EGS, 2005 WL 902130, at *7 (D.D.C. Apr. 18, 2005), without informing the Court that this decision was reversed on appeal, on the ground, *inter alia*, that the D.C. Act regarding rail shipments of hazardous materials "likely does not address an 'essentially local safety or security hazard.'" *CSX Transp., Inc. v. Williams,* 406 F.3d 667, 672 (D.C. Cir. 2005) (quoting and applying the Federal Railroad Safety Act). *American Council of Life Ins. v. District of Columbia,* 645 F. Supp. 84 (D.D.C. 1986), and *Dimond v. District of Columbia*, 618 F. Supp. 519 (D.D.C. 1984), *aff'd in part and rev'd in part on other grounds*, 792 F.2d 179 (D.C. Cir. 1986), both dealt with insurance, which by federal statute is delegated to state control. *See* 15 U.S.C. § 1012(a) ("The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business."). The remaining three cited cases did not even address Home Rule Act issues.[9]

## CONCLUSION

For all the foregoing reasons, the Complaint should be dismissed.

---

[9]    *See Boyle v. Giral*, 820 A. 2d 561 (D.C. 2003); *Rastall v. CSX Transp., Inc.*, 697 A.2d 46 (D.C. 1997); *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1 (D.D.C. 1992). These decisions at most inferentially support the unremarkable proposition that out-of-state defendants can be subjected to properly enacted D.C. law.

Respectfully Submitted,


/s/ Steven J. Rosenbaum
Steven J. Rosenbaum (D.C. Bar No. 331728)
Derron J. Blakely (D.C. Bar No. 483733)
Nadia I. Shihata (D.C. Bar No. 493448)
COVINGTON & BURLING
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 662-6000

January 13, 2006

Attorneys for Defendants Giant Of Maryland, LLC, Safeway Inc., Horizon Organic Holding Corporation, Dean Foods Company, Nestle Holdings, Inc., Farmland Dairies, LLC, Shenandoah's Pride, LLC, and Stonyfield Farm, Inc.