# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 14, 2007    Decided November 16, 2007

No. 06-7148

MILTON MILLS, M.D., ET AL.,
APPELLANTS

v.

GIANT OF MARYLAND, LLC, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 05cv02211)

———

*Daniel Kinburn* argued the cause for appellants. With him on the briefs were *Bernard J. DiMuro* and *John M. Tran*.

*Steven J. Rosenbaum* argued the cause and filed the brief for appellees.

*Geoffrey S. Gavett* filed a notice adopting the brief of appellees on behalf of Cloverland Farms Dairy, Inc.

2

Before: GARLAND and KAVANAUGH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:  In this case, a group of lactose-intolerant individuals filed an unusual class-action lawsuit against nine sellers of milk.  The plaintiffs allege that they consumed milk before they were aware of their lactose intolerance and, as a result, suffered temporary gas and stomach discomfort.  According to plaintiffs, the milk sellers should have put warnings on the labels, informing consumers that some individuals might be intolerant of milk.

The District Court dismissed the suit, holding that it did not state a claim under District of Columbia tort law.  We affirm.  Tort law does not provide protection from the obvious or "widely known" risks of consuming a particular food.  The risk that some people will get gas after consuming certain foods, such as milk, is widely known.  A bout of gas or indigestion does not justify a race to the courthouse.  Indeed, were the rule otherwise, a variety of food manufacturers as well as stadiums, bars, restaurants, convenience stores, and hot dog stands throughout the country would be liable to millions of would-be plaintiffs every day.  Plaintiffs' novel claim falls far short of what D.C. law requires.

I

Millions of Americans suffer from lactose intolerance, a genetic condition that prevents them from processing the principal sugar in milk.  NAT'L INST. OF DIABETES & DIGESTIVE & KIDNEY DISEASES, U.S. DEP'T OF HEALTH & HUMAN SERVS., LACTOSE INTOLERANCE 3 (2006).  For

3

lactose-intolerant individuals, the consumption of milk and other dairy products can result in unpleasant stomach symptoms.

Plaintiffs are a group of lactose-intolerant individuals who reside in the District of Columbia and Maryland. They purport to represent a class of all lactose-intolerant persons "who, unaware of their condition, have purchased milk in Washington, D.C., and suffered the consequences of its consumption." Complaint at 8, *Mills v. Giant of Md.*, No. 05cv02211 (D.D.C. Oct. 6, 2005), Joint Appendix ("J.A.") 17. They allege that, before they were aware of their condition, they suffered temporary "flatulence, bloating, cramps, and diarrhea" as a result of drinking milk. Complaint at 2, J.A. 11. Plaintiffs filed suit in the Superior Court of the District of Columbia against nine defendants – seven dairy processors and two grocery-store retailers that sell milk in D.C. Under the Class Action Fairness Act, defendants removed the case to the U.S. District Court for the District of Columbia. *See* 28 U.S.C. §§ 1332(d), 1453.

In their complaint, plaintiffs allege that the milk sellers breached their duty of reasonable care. According to plaintiffs, the sellers were aware of the effects of milk on consumers who did not yet know they were lactose intolerant, but the sellers failed to warn consumers about those effects. Plaintiffs' lawsuit seeks damages as well as a permanent injunction requiring milk sellers to include warnings on their milk packaging, such as the following:

> Warning – If you experience diarrhea or stomach cramps after consuming milk, you may be lactose intolerant. Check with your physician.

4

> Warning – Lactose intolerant individuals may experience bloating, diarrhea, or other gastrointestinal discomfort from consuming milk. Check with your physician.

Complaint at 17, J.A. 26.

The District Court dismissed the suit under Federal Rule of Civil Procedure 12(b)(6). First, the court concluded that the federal Nutrition Labeling and Education Act preempted plaintiffs' D.C. tort-law claim. *See* 21 U.S.C. § 343-1(a)(1). The NLEA prohibits states and local authorities from establishing any requirement for food that is the subject of a federal "standard of identity" – a federal definition of the composition of a food – unless the requirement is identical to that federal standard of identity. *See id.* The court concluded that D.C. may not impose labeling requirements for milk different from the labeling requirements that federal law imposes.

Second, the court held that, in any event, plaintiffs failed to state a claim under D.C. tort law. The District Court concluded that no duty to warn exists when the health hazard associated with a food product is analogous to a common allergy. The court reasoned that, because lactose intolerance is a widely known condition and results in less severe symptoms than many common allergies (such as shellfish allergies), there is no duty to warn of the risk of consuming milk.

We review de novo the District Court's dismissal of plaintiffs' claim. *Gilvin v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001). The existence of a legal duty to warn in this situation is a question of law for the court to determine. *In re Sealed*

5

*Case*, 67 F.3d 965, 968 (D.C. Cir. 1995) (citing *Zhou v. Jennifer Mall Rest.*, 534 A.2d 1268, 1274 (D.C. 1987)).

II

According to plaintiffs, milk manufacturers and sellers must provide warnings that milk can cause certain consumers to suffer temporary gas and stomach discomfort. The problem for plaintiffs is that a manufacturer's or seller's duty of reasonable care does not entail a duty to warn of risks "that should be obvious to, or generally known by, foreseeable product users." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. j (1998); *see Delahanty v. Hinckley*, 564 A.2d 758, 760 (D.C. 1989) ("There is no duty to warn . . . 'when the danger, or potentiality of danger, is generally known and recognized.'") (quoting RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (1965)); PROSSER & KEETON ON THE LAW OF TORTS § 96, at 686 (5th ed. 1984). This principle derives from the common-sense notion that warning of an "obvious or generally known risk in most instances will not provide an effective additional measure of safety." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. j. After all, "warnings that deal with obvious or generally known risks may be ignored by users and consumers and may diminish the significance of warnings about non-obvious, not-generally-known risks." *Id.*

In the food context, these tort-law principles foreclose failure-to-warn liability when the risk that some people might have an adverse reaction to the food is "widely known." As the Restatement of Torts explains, when "both the presence of an allergenic ingredient in the product and the risks presented by such ingredient are widely known, instructions and warnings about that danger are unnecessary." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. k; *see also*

6

RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (Where "the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it . . . .").

Courts have applied these principles to a host of failure-to-warn challenges regarding the widely known risks of consuming certain foods. *See, e.g.*, *Garrison v. Heublein, Inc.*, 673 F.2d 189, 192 (7th Cir. 1982) (dangers of alcohol are "common knowledge"); *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 541 (S.D.N.Y. 2003) (health risks associated with fast foods are "open and obvious"); *id.* at 532 ("It is well-known that fast food in general, and McDonalds' products in particular, contain high levels of cholesterol, fat, salt, and sugar, and that such attributes are bad for one."); *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 388 (Tex. 1991) (danger of alcohol is "widely known and recognized"); *Maguire v. Pabst Brewing Co.*, 387 N.W.2d 565, 570 (Iowa 1986) (risk of intoxication from beer is "sufficiently known to consumers at large"); *see also* RESTATEMENT (SECOND) OF TORTS § 402A cmt. i (ordinary consumer is aware that sugar can harm diabetics); *id.* (well known that butter can cause clogged arteries); *cf.* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. k, illus. 13 (producers can assume that those who are allergic to aspirin are aware of their allergies); RESTATEMENT (SECOND) OF TORTS § 402A cmt. j ("The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them.").

In two main categories of cases, the risks from food are *not* considered "widely known": "unknown-ingredient" cases and "unknown-harm" cases.

7

The first category – "unknown-ingredient" cases – encompasses situations where a substantial number of consumers are allergic to a food ingredient that reasonable consumers would not expect to find in the food. *See, e.g.*, *Livingston v. Marie Callender's, Inc.*, 72 Cal. App. 4th 830, 832, 839-40 (1999) (MSG in fresh vegetable soup); *Brown v. McDonald's Corp.*, 655 N.E.2d 440, 442-44 (Ohio Ct. App. 1995) (seaweed-derived ingredient in hamburger). The parties here agree, however, that this is not an "unknown-ingredient" case: Plaintiffs' complaint relates not to an unknown ingredient in milk but rather to the known and inherent qualities of milk.

The second category – "unknown-harm" cases – encompasses situations where reasonable consumers are not aware of the harm that a food may cause to certain people. In other words, although consumers may know the ingredients in a certain food, they may not know the harm that the food or the food's known ingredients can bring about. The relevant inquiry in an "unknown-harm" case is whether a "reasonable" consumer would know that the food could cause an adverse reaction in some people. *See* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 cmt. k.[1]

We need not ponder what kinds of hypothetical food cases, if any, properly fit into the "unknown-harm" box under D.C. tort law because we hold as a matter of law that a reasonable consumer today would be well aware that milk may adversely affect some people. Although it is true that lactose intolerance is not randomly dispersed throughout the

---

[1] This case involves a claim about the inherent aspects of a food product, not about an adulterated food, such as when a pebble is found in a can of peas. An adulterated food is considered a manufacturing defect. *See* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 7 cmt. a; *id.* § 2 cmt. h.

8

population, the fact that 30 to 50 million Americans suffer from some level of lactose intolerance makes it likely – as a matter of basic statistics – that most Americans and most D.C. residents know a family member, friend, co-worker, or other acquaintance who cannot comfortably drink milk. *See* NAT'L INST. OF DIABETES & DIGESTIVE & KIDNEY DISEASES, U.S. DEP'T OF HEALTH & HUMAN SERVS., LACTOSE INTOLERANCE 3 (2006). Moreover, products targeted to lactose-intolerant individuals are now commonplace in grocery stores and pharmacies. *See, e.g.*, CVS/pharmacy, cvs.com; Lactaid, lactaid.com; Organic Valley, organicvalley.coop; Peapod by GIANT, peapod.com. And in addition to knowledge distributed by word of mouth, the problem of lactose intolerance has received an extraordinary amount of attention in the media and in the medical community. *See, e.g.*, Jane E. Brody, *Food Allergies: A Growing Controversy*, N.Y. TIMES, Apr. 29, 1990 ("The best known [adverse reaction to food] is lactose intolerance . . . ."); Elena Cherney, *New Lactose-Intolerance Advice*, WALL ST. J., Sept. 5, 2006, at D4; Daniel Q. Haney, *Lactose Intolerant? Think Again*, HOUSTON CHRON., July 6, 1995, at A16; Lynn Jacobson, *Got Distress? Maybe You're Lactose Intolerant*, SEATTLE TIMES, May 16, 2001, at E1; *Lactose Intolerance Is Common*, CINCINNATI POST, July 24, 2001, at 7B; Warren E. Leary, *Just How Distressing Is Lactose Intolerance?*, N.Y. TIMES, July 12, 1995 ("Dr. Levitt said he believed that many people say milk is to blame for their digestive problems because lactose intolerance has been so well publicized and widely discussed."); Hilary E. MacGregor, *Dairy Needed, Even for the Lactose-Intolerant*, L.A. TIMES, Sept. 13, 2006; Kim Painter, *Don't Milk Lactose for Ills*, USA TODAY, July 6, 1995, at 1A (describing lactose intolerance as a "trendy ailment"); Connie Prater, *Got Gas? You Might Be Lactose Intolerant*, CHI. TRIB., Mar. 30, 2003, at Q10; *see also*

9

NUTRITIONAL  DISEASE,  ENCYCLOPAEDIA  BRITANNICA ONLINE.

We will not belabor the obvious.  For purposes of tort law, the risk that milk will cause some people to experience temporary gas and related stomach discomfort is "widely known" – even if lactose intolerance as the cause is not.  As a result, the risk that milk will cause temporary gas and stomach discomfort to lactose-intolerant individuals who do not yet know of their condition cannot support a failure-to-warn tort claim under D.C. tort law.[2]

* * *

We hold that plaintiffs' claim is not cognizable under D.C. tort law.  We therefore do not determine the preemptive scope of the "standard of identity" for milk under 21 U.S.C. § 343-1(a)(1) and 21 C.F.R. § 131.110.  Similarly, we withhold judgment on whether the kinds of injuries alleged by plaintiffs fall within the "safety" exception to the preemption provision.  *See* Nutrition Labeling & Education Act, Pub. L. No. 101-535, § 6(c)(2), 104 Stat. 2353, 2364 (1990).  We affirm the judgment of the District Court.

*So ordered.*

---

[2] Even if the risk were not widely known, the fact that the alleged harm from consuming milk is temporary and limited still might negate any warning requirement.  *Cf. Owens-Corning Fiberglas Corp. v. Henkel*, 689 A.2d 1224, 1229 (D.C. 1997).